**CARGILL, Inc., Appellant,**

v.

**COMPAGNIE GENERALE TRANSATLANTIQUE, as Owner and Operator of THE S. S. CAVALIER DE LA SALLE and Commodity Credit Corporation, Appellees.**

**No. 15919.**

United States Court of Appeals
Fifth Circuit.
June 30, 1956.

George F. Wood, John H. Tappan, Mobile, Ala., Pillans, Reams, Tappan, Wood & Roberts, Mobile, Ala., of counsel, for appellant.

T. K. Jackson, Jr., Mobile, Ala., John W. Sims, New Orleans, La., Keener T. Blackmarr, Asst. U. S. Atty., Mobile, Ala., Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., and Inge, Twitty, Armbrecht & Jackson, Mobile, Ala., of counsel, for appellees.

Before HUTCHESON, Chief Judge, and RIVES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

The French Line filed a libel against Cargill, Inc., for demurrage under a freight booking engagement contract for failure of the shipper to have the cargo of grain available in the port for loading on the S. S. Cavalier De La Salle at the specified time. The shipper answered, and then, under the 56th Admiralty Rule [1] filed a petition impleading Commodity Credit Corporation on the grain sales contract [2] claiming that if it had

---

1. Rule 56, 28 U.S.C.A. "Right to bring in party jointly liable. In any suit, whether *in rem* or *in personam*, the claimant or respondent (as the case may be) shall be entitled to bring in any other vessel or person (individual or corporation) who may be partly or wholly liable either to the libellant or to such claimant or respondent by way of remedy over, contribution or otherwise, growing out of the same matter. * * * "

2. The "Confirmation of sale" in unilateral letter form addressed to Cargill, Inc., was as follows: (italics and numbers in [ ] are added to emphasize the numerous contract conditions):

'United States Department of Agriculture.
"Commodity Credit Corporation.
"A5pm(Fs) 5698-EXP.
"CCC Form M-5c (Rev.)
"Confirmation of Sale.
"June 9, 1954
" * * * * * * *
"We are pleased to confirm *sale to you* today by Commodity Credit Corporation, of 150,000 Bushels No. 4 Soft Red Wheat at $1.30 per Bushel *basis FOB Vessel.* Buyers Call, through July 1954. Mobile Official weights Mobile Official grades inspection * * * shipment.
"To be billed as follows: [1] Vessel *to*

*load* at Mobile, Alabama. Storage for account of CCC to date of lifting, or through July 31, 1954, whichever is earlier. [2] Purchaser to remit direct to CCC, Dallas, Texas giving contract number and quantity. [3] Subject to Terms and Conditions of Announcement GR-212, as amended. [4] By signing acceptance of this contract and returning it to CCC, buyer certifies that no funds derived, in whole or in part, from appropriations made by the Congress for foreign aid or assistance, or from any other U. S. Government funds (hereinafter referred to as Government funds) will be used in paying for the commodity; [5] and the commodity will not be resold to anyone paying therefor, in whole or in part, with Government funds, unless the purchase price paid to CCC by the purchaser is determined by CCC to be not less than the market price of the commodity at time of purchase and place of delivery. [6] The purchaser shall, within 60 days from the date or purchase of the commodity, export to a foreign country the identical commodity (or products that are processed from such identical commodity, such as flour, starch, etc.) delivered to him and [7] shall, within 30 days after exporting the commodity, furnish CCC adequate proof of such exportation. [8] Price of

failed to have the cargo available as agreed with the vessel, it was all due to CCC's breach of its contract.

Long before the impleaded respondent CCC had anything to say about its wishes, the Court sustained the libellant's exception to the impleader that the "cause of action alleged in said petition is independent of the original controversy, is in no way germane thereto, and does not grow out of the same matter or cause of action on which the original libel is founded." The dismissal was without written opinion or findings although, from the argument, it seems agreed that the Judge thought the case rigidly controlled by our decision in Standard Fire Insurance Co. v. Boyce-Harvey Machinery, Inc., 5 Cir., 202 F.2d 871, 1953 A.M.C. 623.

This was not unnatural, although we should here make plain that affirming, as we did there, the act of a District Judge as he presides over the endless variety of subsidiary procedural controversies which relate to the form or manner in which substance is finally to be tested, what we say need not necessarily be "according to the law of the Medes and Persians which altereth not."

There are undoubtedly situations (in addition to jurisdictional ones) in which allowance of an impleader under Rule 56 would so complicate a case, frustrate justice, impose hardship or cause such real harm that, on review, we would have to declare a District Court in error for having permitted it. But this would be rare—rarer perhaps than for similar action under F.R.C.P. 14 where the element of adverse effect on a jury trial might be present. Cf. Jones v. Waterman S. S. Corp., 3 Cir., 155 F.2d 992, 1946 A.M.C. 859. Conversely, the facts, the nature of the underlying claim, the necessities for service of process, in rem or in personam, availability of seagoing witnesses, or other like circumstances might so plainly call for allowance [3] of impleader that denial would itself be reversible. But this too will be rare. For by its very nature, the determination of whether a proposed impleader comes within the Rule is a matter which must be committed to the careful, informed judgment—discretion—of the Trial Judge as he sees a case developing.

And this gives a due regard to the origin of the Rule which Judge Addison Brown, with pioneering courage, brought

---

this contract is the market price as determined by CCC for grade and class of wheat to be delivered. [9] This sale is not eligible for subsidies or export allowances under GR-261, -262, or Under IWA under GR-212.

    "Yours truly,

    "Commodity Credit Corporation,

" *   *   *   *   *   *   * "

The French line makes a vigorous assertion that, required as we are to notice jurisdictional defects at any time, Kilb v. Menke, 5 Cir., 121 F.2d 1013, 1941 A.M.C. 1344; North Atlantic & Gulf Steamship Co., Inc., v. United States, 2 Cir., 209 F.2d 487, 1954 A.M.C. 363; Longview Tugboat Company v. Jameson, 9 Cir., 218 F.2d 547, 1955 A.M.C. 282, impleader would fail for that reason, Aktieselskabet Fido v. Lloyd Brazileiro, 2 Cir., 283 F. 62, certiorari denied 260 U.S. 737, 43 S.Ct. 97, 67 L.Ed. 489; The Lake Galera, 2 Cir., 60 F.2d 876, 1932 A.M.C. 1228; Rudy-Patrick Seed Co. v. Kokusai Kisen Kabushiki Kaisha, D.C.S.D.N.Y., 1 F. Supp. 266, 1932 A.M.C. 1508; (2 Benedict on Admiralty, 6 Ed., Section 350, page 537, suggests some doubt), since

this contract was non-maritime. We do not pass on this for, coming as it does without adequate exposition, pleading and proof below on the true nature of the agreement with CCC, we could not with assurance say whether it was primarily maritime or non-maritime since, "It is not always easy to determine what is a maritime contract. The dividing line between causes maritime and non-maritime is not always strongly marked," 1 Benedict on Admiralty, 6 Ed., Section 64, page 130, see also, Sections 62, 63, 65, 66, 67.

3. The Rule does use the word "shall" to describe the manner of invoking impleader, the issuance of process and, in like terms, provides, " *   *   * Thereupon such process shall issue, and * * *, such suit shall proceed as if such vessel or person had been originally proceeded against; the other parties * * * shall answer * * *; the claimant of such vessel or such new party shall answer the libel; and such further proceedings shall be had and decree rendered by the court in the suit as to law and justice shall appertain. * * *" (Italics added.)

into being, without benefit of authoritative precedent or anything but the barest indication of a statutory rule-making power, to meet the demands of equity, The Hudson, D.C.S.D.N.Y., 15 F. 162; see, In re New York and Porto Rico Steamship Company, 1894, 155 U.S. 523, 528, 15 S.Ct. 183, 883, 39 L.Ed. 246; 2 Benedict on Admiralty, 6th Ed., Section 349, page 533, and Section 351, page 538; and takes proper account of the legal capacity of United States District Judges who, in their daily grappling with today's complex litigation, successfully meet the challenge of assimilation of intricate, voluminous evidence in endless fields of the law. To such a Judge, mixing a tort with a contract case, separating evidence for its application to one but not the other phase of an action, applying one basis of liability or measure of damages to one but a different standard to another, is hardly the sort of problem we should hold exceeds his competence if he determines to undertake it. See, e. g., Eastern Massachusetts Street Ry. Co. v. Transmarine Corporation, 1 Cir., 42 F.2d 58, 1930 A. M.C. 1454; Loma Fruit Company v. International Navigation Co., Ltd., 2 Cir., 11 F.2d 124, 1924 A.M.C. 664.

On the other hand, perhaps the Judge will conclude, as he did here, that the indicated complications, e. g., The Donald T. Wright, D.C.W.D.Ky., 30 F.Supp. 610, 1940 A.M.C. 291; Cf. Lee's Inc., v. Transcontinental Underwriters, D.C.Md., 9 F. R.D. 470, construing F.R.C.P. 14(a), outweigh the aim of the Rule which, "is designed to save expense and to avoid the duplication of trials", Standard Fire Insurance Co. v. Boyce-Harvey Machinery, Inc., supra [202 F.2d 872], and is intended, "* * * to avoid a multiplicity of suits; to secure a complete hearing of the subject-matter, through the presence of all of the parties interested; to obtain an adjudication * * * binding upon all; to avoid conflicting decisions to which separate suits would be liable through the different evidence likely to be produced in them * * * and thus to avoid any possible failure of justice through such causes * * *", In re

New York and Porto Rico Steamship Company, 155 U.S. 523, 525, 15 S.Ct. 183, 184, 39 L.Ed. 246, 247. Certainly the Judge had a basis for it here since the relatively simple issue framed by libel and answer might conceivably become involved in unpredictable complexities, both of proof and law, in the controversy between Cargill and this Governmental agency. Not the least of these questions would be the nature of the agreement— whether all as written or, more likely, a bare-bones memorandum in which customs of the grain trade would fill out the flesh of an imposing undertaking—the numerous, but vague conditions which the grain producer must meet to hold the Government corporation liable, the time and place for the grain availability, and the like.

Under the formula of the Rule— "* * * growing out of the same matter * * * "—and the equitable purposes which it seeks to meet, rejecting these importunities of one of the suitors to divert this simple case from its simple path was patently within the Judge's discretion and we affirm it.

Affirmed.