**TRAVELERS INSURANCE COMPANY,**
Appellant,

v.

**BUSY ELECTRIC COMPANY, Z. Kermit Remy and Raymond Voelker,**
Appellees.

No. 18778.

United States Court of Appeals
Fifth Circuit.

July 17, 1961.

———◆———

Michael J. Molony, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for defendant and appellant and third party plaintiff, the Travelers Ins. Co.

Dermot S. McGlinchey, Carl J. Schumacher, Jr., New Orleans, La., for third party defendant and appellee, Z. Kermit Remy and Raymond Voelker, d/b/a Busy Electric Co.; Lemle & Kelleher, New Orleans, La., of counsel.

Before CAMERON, BROWN and WISDOM, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

 We deal here with the problem of third party impleader sought by a defendant tort-feasor against another tort-feasor. Complicating what is otherwise a simple application of a rule simply stated, F.R.Civ.P. 14, 28 U.S.C.A., is the fact that this is a diversity case. Both the enabling Act, 28 U.S.C.A. § 2072, and Erie combine to forbid the accidental creation of a substantive right through the operation of this procedural device.

As with so much of the business of the Federal District Courts in Louisiana, this started as a suit under the Direct Action Statute to transport a purely local controversy from its civil law surroundings to a common law oasis with its appealing jury trial. LSA–R.S. 22:655. Lumbermen's Mutual Casualty Co. v. Elbert, 1954, 348 U.S. 48, 75 S.Ct. 151, 99 L.Ed.

59; Travelers Indemnity Co. v. Bengtson, 5 Cir., 1956, 231 F.2d 263, at page 264; McClendon v. T. L. James & Co., 5 Cir., 1956, 231 F.2d 802, at page 803.

It simplifies matters to talk of the parties as they actually are. The plaintiff, Numa Schomaker, was an employee of Busy Electric Company.[1] Busy Electric had a contract with the Housing Authority of New Orleans (HANO) to make certain repairs to the electrical distribution system at one of its projects in the city. While Schomaker was engaged in performing this work, he was severely injured when a light pole broke at its base throwing him to the ground. Schomaker, as plaintiff, sued HANO.[2] Taking full advantage of the permissible concept of notice pleading, F.R.Civ.P. 8(a), the complaint charged merely that the injuries were " * * * caused by the negligence of the Housing Authority of New Orleans through their agents or employees, in failing to maintain the aforesaid pole in safe condition, which maintenance was the responsibility of the said Housing Authority."

In its answer HANO, the defendant, after the usual denial, alleged that the injuries were caused by the contributory negligence of Schomaker, the plaintiff, in exposing himself to risks, failing to take precautions for his safety or to ascertain the condition of the wood pole before he climbed it. It also charged separately that Schomaker assumed the risk of using a pole which he knew to be unsound. As a further separate Sixth Defense, HANO alleged that it had contracted with Busy Electric to do repairs to its electrical distribution system and that the work being performed was under the sole control of Busy Electric. Consequently, it asserted, the injuries to Schomaker were "caused solely by the negligence of Busy Electric Company, its agents and employees * * *" for various reasons.[3]

---

1. A partnership composed of Z. Kermit Remy and Raymond Voelker.

2. The defendant was, of course, Travelers Insurance Company, the liability insurer of Hano.

3. The negligence charged against Busy Electric was the failure to inspect the pole, to warn the plaintiff of the condition of the pole when its condition should have been known, to provide plaintiff with

Thereafter the Court, on motion of HANO, permitted the filing (and amendment) of the third party complaint by HANO impleading Busy Electric. In the words of F.R.Civ.P. 14, it alleged that Busy Electric is "or may be liable to third party plaintiff." Continuing, it realleged substantially the same matters set forth in its Sixth Defense concerning the contract with Busy Electric and the performance of the work under its sole control and supervision. After denying that there was any "negligence whatsoever on the part of the Housing Authority * * *," it then specifically claimed that if the "accident alleged in the complaint [of Schomaker against HANO] was caused by negligence, then the sole proximate cause * * * was the negligence of "Busy Electric in the four particulars specified, see note 3, supra. It further alleged that under § 28(a) of the contract with Busy Electric dated July 11, 1958, Busy Electric agreed to hold HANO harmless for any personal injury that occurred resulting from fault or negligence of Busy Electric.[4] The complaint concluded with a general assertion that HANO was "free of any negligence whatsoever and the proximate cause of the accident * * * was the negligence of the third party" Busy Electric. The prayer was the usual one that "in the event of any judgment in favor of plaintiff and against" HANO, "there be judgment over and against" Busy Electric "jointly, severally and in solido * * *."

To all of this Busy Electric, third party defendant, filed without supporting affidavits, depositions or facts of any kind a motion for "summary judgment * * on the ground that Third-Party Complainant [HANO] * * * has no basis in law or in fact for its Third-Party Complaint against * * * Busy Electric * * *." With no more illumination the Court, without stated reason, memorandum, or opinion, granted the motion for summary judgment and thereafter entered a formal decree "that judgment * * * is hereby entered * * * in favor of Busy Electric * * * dismissing the third party complaint * *." Simultaneously the Court made an express finding that there "is no just reason for delay and directs the entry of judgment as to the 3rd party defendants, Busy Electric * * *" as permitted under F.R.Civ.P. 54(b).

At the outset we must determine the question raised by the Court as to our jurisdiction to hear the appeal. Considering the nature of this decree as one on summary judgment with an order of dismissal which carries with it (in the absence of the language negativing such purpose) the idea that it is with prejudice, F.R.Civ.P. 41(b), we think that with the § 54(b) certificate, the judgment became final and appealable as such.

First, it fits the words of the Rule since the total pleadings present "more than one claim for relief * * * whether as a claim, counter-claim, cross claim, or third party claim * * *." F.R.Civ.P. 54(b). It should be emphasized that this is not the mere refusal of the trial court in the exercise of its discretion to permit the filing of a third party complaint.[5] The filing was allowed and then on its

a safe place to work, and failure to take suitable precautions when they knew an employee would ascend the pole known to be defective. The answer concluded with a prayer for dismissal of the plaintiff's complaint and alternatively for judgment over against Busy Electric. Busy Electric, however, was not at that moment a party.

4. The contract provided:
"28. Care of the Work:
"a. The Contractor shall be responsible for all damages to persons * * * that occur as a result of his fault or negligence in connection with the prosecution of the work and shall be responsible for the proper care and protection of all materials delivered and work performed until completion and final acceptance * * *."

5. Cf. Sechrist v. Dyke, 4 Cir., 1948, 256 F.2d 881; Ford Motor Co. v. Milby, 4 Cir., 1954, 210 F.2d 137.

merits the Court determined that the third party defendant, Busy Electric, should prevail. Until set aside, this is res judicata—a position which counsel for Busy Electric on the argument asserted with propriety would be taken in the event of affirmance by us. As to this situation, Professor Moore declares quite positively " * * * if the district court finally disposes of a third-or-fourth-party claim and executes a certificate [under 54(b)], this adjudication is final, although the main claim remains pending." 6 Moore, Federal Practice § 54.36 at 252. See also 3 Moore, Federal Practice § 14.-19 at 449. Pabellon v. Grace Line, Inc., 2 Cir., 1951, 191 F.2d 169; Capital Transit Co. v. District of Columbia, 1955, 96 U.S.App.D.C. 199, 225 F.2d 38; Henry Fuel Co., Inc. v. Whitebread, 1956, 99 U.S.App.D.C. 9, 236 F.2d 742. Nothing in Meadows v. Greyhound Corp., 5 Cir., 1956, 235 F.2d 233; Nettles v. General Accident Fire & Life Assurance Corp., 5 Cir., 1956, 234 F.2d 243; or Howze v. Arrow Transportation Co., 5 Cir., 1960, 280 F.2d 403, is to the contrary.

■■ On the merits we are equally clear that the dismissal was erroneous. Much of the difficulty comes from a failure to reckon with the basic nature of a complaint under the Rules. Busy Electric apparently persuaded the Court to read the pleadings as though that was all there was to the case. Of course, as we have so many times pointed out, this is not the test. Millet v. Godchaux Sugars, 5 Cir., 1957, 241 F.2d 264, at page 265, see n. 1; Colman v. Alcock, 5 Cir., 1959, 272 F.2d 618, at page 622. Phrased and rephrased it is reiterated in Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80. "In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, at pages 45–46, 78 S.Ct. 99, at page 102. In the light of this, it is a risky course to stand on the pleadings and that is all that the summary judgment in this case amounted to. Demandre v. Liberty Mutual Ins. Co., 5 Cir., 1959, 264 F.2d 70, at pages 72, 74.

This approach is most spectacular in its application and consequences when we assay the theory which Busy Electric asserts here, and presumably did below, why the claim on the written indemnity agreement was insufficient to permit relief. Here is an express contract, note 4, supra, by which Busy Electric indemnifies HANO against personal injury claims asserted by third persons against HANO. Schomaker's suit is such a claim. By an adroit use of precise words and phrases out of HANO's Sixth Defense and third party complaint, Busy Electric erects a logical structure proving that under no circumstances could it be liable. First, it asserts, if HANO is not negligent, it will have no liability to Schomaker, and the indemnity will be unneeded and inconsequential. Next, if Schomaker was contributorily negligent, as HANO expressly alleges, there can be no liability, and indemnity is again useless. Third, if Busy Electric is solely at fault, HANO cannot be cast. Finally, if HANO is negligent along with Busy Electric, then it can have no indemnity since Busy Electric undertakes to indemnify only against its own negligence, and not that of HANO, or the joint negligence of both.

But this is too fine and too fast. Whether this contract is broad enough, or too broad, or specific enough or too specific to encompass within the promise of indemnity this particular occurrence will depend on what the facts ultimately show.[6] There are infinite gradations of negligence and fault as we shall see in discussing the next phase of this case. Some are characterized by Louisiana

6. See Batson-Cook Co. v. Industrial Steel Erectors, 5 Cir., 1958, 257 F.2d 410, as to general principles of construction of indemnity agreements. What the Lou-isiana rule is presents another one of the serious problems the Court on trial must determine.

courts as "constructive" or "technical." Other jurisdictions often regard them as "major" or "minor," "active" or "passive." Undoubtedly the quality and the degree of fault must be known before an intelligent determination can be made concerning the interpretation and application of the contract of indemnity to this situation. So long as any regard is paid to the Federal Rule relating to a complaint, that must here await the facts, not the legalistic characterization of what the lawyers say the facts will mean. Demandre v. Liberty Mutual Ins. Co., supra, 264 F.2d 70. Carss v. Outboard Marine Corp., 5 Cir., 1958, 252 F.2d 690, at page 693, 1958 A.M.C. 638; Camilla Cotton Oil Co. v. Spencer Kellogg & Sons, Inc., 5 Cir., 1958, 257 F.2d 162, at page 167.

Concededly, the matter is or may be more involved when it comes to the claim based on general principles of contribution or indemnity unaided by the contractual hold-harmless agreement. The trouble arises from the substantive Louisiana law. The right of impleader, broad and flexible as it is, still speaks in terms of impleading "a person * * * who is or may be liable * * * for all or a part of the plaintiff's claim against" the impleader. F.R.Civ.P. 14(a). If Louisiana allows contribution, then this facility is available to effectuate it. If Louisiana does not allow contribution, then there is no contingent liability to be asserted, and to allow an impleader would be to create, through Federal Rules, a right which Louisiana denies. At the same time if, by operation of Louisiana's procedural reforms, the substantive law has effectually been altered, no impediment exists to achieve a like result through giving full range to F.R. Civ.P. 14. Otherwise we might witness a reversal of the usual outcome-determinative test. See Monarch Insurance Co. of Ohio v. Spach, 5 Cir., 1960, 281 F. 2d 401. In this spatial quasi-geographic inquiry, the ordinary apprehension is that application of the Federal Rules will produce an advantage to a litigant in the Federal Court which his counterpart down the street in the County Courthouse will not enjoy. While the principle forbids the Rules creating an advantage, we think that barring clear language compelling it, neither should the Federal Rules cause the litigant to be worse off than he would be a block away.

■■ Whatever the difficulties as to contribution, the Louisiana law recognizes the substantive right of indemnity among those who may be characterized as joint tort-feasors at least in the sense that action by each has constituted a breach of some legal duty with resulting harm. The principle is voiced in these terms in the leading case of Appalachian Corporation, Inc. v. Brooklyn Cooperage Co., Inc., 1922, 151 La. 41, 91 So. 539, at page 541. The Court states that "where * * * the actual fault of the proximate cause of injury is attributable to one of the parties and the other is only technically or constructively at fault, from failure or omission to perform some legal duty, the general rule will not apply, and indemnity may be had against the one primarily responsible for the act which caused the damage." The vitality of this case continues unabated. Marquette Casualty Company v. Brown, 1958, 235 La. 245, 103 So.2d 269, at page 273. "The Appalachian case is authority for the proposition that a joint tortfeasor who was only technically or constructively at fault can recover from the joint tortfeasor who was actually at fault." Northwestern Mutual Fire Association v. Allain, 1954, 226 La. 788, 77 So.2d 395, at page 399, 49 A.L.R.2d 362.

■ This substantive right has existed at least since 1922. The recent Louisiana Third Party Practice Act of 1954 [7] reflects also a substantive purpose to permit such right to be enforced, not only in a direct subsequent suit as

---

7. This is now found in Art. 1111, LSA-Code of Civil Procedure:
"The defendant in a principal action by petition may bring in any person, including a codefendant, who is his warran-tor, or who is or may be liable to him for all or part of the principal demand. * * *."
This was enacted as Act 433 of 1954, L.S.A.–R.S. 13:3381.

in Appalachian, but by impleader in the main case.

Busy Electric does not really challenge this. It overcomes this by again emphasizing the literal words of Schomaker's complaint which charges negligence of HANO "through their agents or employees, in failing to maintain the * * pole in safe condition * * *." This, it asserts, demonstrates positively that the plaintiff's demand is not, as in Appalachian, based upon constructive or technical fault. But until the facts are established, how do we know whether this amounts to "affirmative" or "active" fault or, as contended by HANO, merely the assertion of a liability based on the landowner's pervasive duty to keep the premises in good repair?[8]

 There are no other obstacles to the use of F.R.Civ.P. 14 which are beyond the capacity of a trial judge to control. See Cargill, Inc. v. Compagnie Generale Transatlantique, 5 Cir., 1956, 235 F.2d 240, at page 243; 1956 A.M.C. 1545. Relief need not be thwarted by the nature of indemnity which ordinarily imposes an obligation to reimburse another only after sustaining a loss. This may be handled either by a conditional decree, United Gas Corp. v. Guillory, 5 Cir., 1953, 206 F.2d 49, at page 53, or the entry of a declaratory judgment, F.R.Civ.P. 57; 28 U.S.C.A. § 2201. Declaratory relief is proper even though not expressly prayed for since, there being no default, F.R.Civ.P. 54(c) commands that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." The wording of Rule 14(a) encompasses any person who "is or *may be* liable." The result of this is that "the

accrual of a right is sometimes accelerated under Rule 14." 3 Moore, Federal Practice § 14.08 at 419. See also F.R. Civ.P. 18(b).

There are, without a doubt, serious complications when we come to the matter of contribution, as distinguished from indemnity. This Court in Linkenhoger v. Owens, 5 Cir., 1950, 181 F.2d 97, expressly rejected a series of cases by one United States District Judge in Louisiana allowing an impleader of a joint tortfeasor under F.R.Civ.P. 14.[9] In Louisiana joint tort-feasors are liable *in solido*, that is, each may be compelled to pay the full loss. The plaintiff has the privilege of determining which of the tort-feasors he will sue. If he sues two or more, then as between those parties to the litigation who are cast in judgment, a right of contribution does exist. But where only one tort-feasor is sued, he has no right of contribution. This is without regard to whether he attempts to assert it in the main case or does it by a separate suit against the joint tort-feasor subsequent to the original judgment. We summarized it this way. "Certainly the rulings * * * demonstrate that the substantive law of Louisiana is that as held in Quatray v. Wicker, supra [1933, 178 La. 289, 151 So. 208] the right of contribution between joint tortfeasors exists only in behalf of one of the joint tortfeasors who is compelled to pay damages awarded by judicial decree against both *in solido*." 181 F.2d 97, at page 101. We went on to say that " * * * there is express authority by the Supreme Court of Louisiana subsequent to the decision in Quatray v. Wicker, supra, that an independent suit to enforce contribution predicated upon a judgment alone against the erstwhile defendant seeking

---

8. HANO refers to Arts. 670 and 2322, La. Civ.Code of 1870; 4 Tulane L.Rev. 611 (1930).

9. Judge Porterie was persistent. See Gray v. Hartford Accident & Indemnity Co., D.C.W.D.La.1940, 31 F.Supp. 299; Gray v. Hartford Accident & Indemnity Co., D.C.W.D.La.1940, 32 F.Supp. 335; Gray v. Hartford Accident & Indemnity

Co., D.C.W.D.La.1941, 36 F.Supp. 780; and Shannon v. Massachusetts Bonding and Insurance Co., D.C.W.D.La.1945, 62 F.Supp. 532. While by subsequent events he was not sustained on the law, he could say in Shannon of the Gray series that they "covered all business contingencies and, in truth, brought about a settlement of the case without a trial on the merits." 62 F.Supp. 532, at page 536.

to enforce contribution, may not be maintained against the alleged tortfeasor who was not named as a defendant in the suit out of which the judgment arose. Aetna Life Insurance Co. v. DeJean, 185 La. 1074, 171 So. 450." 181 F.2d 97, at page 102.[10]

If this remains the substantive law of Louisiana, then, of course, impleader under F.R.Civ.P. 14 may not be used by the one tort-feasor sued in order to bring in another not sued but who, had they been jointly pursued, would have had a liability to contribute. F.R.Civ.P. 14 "creates no substantive rights. Thus unless there is some substantive basis for the third-party plaintiff's claim he cannot utilize the procedure of Rule 14. The Rule does not establish a right of reimbursement, indemnity, nor contribution; but where there is a basis for such right Rule 14 expedites the presentation, and in some cases accelerates the accrual, of such right." 3 Moore, Federal Practice § 14.-03 at 409–10, and see § 14.11 at 427.

This has brought us to an extended consideration—both on argument and by supplemental briefs requested by the Court—of the Louisiana Third Party Practice Act of 1954, see notes 7, supra and 12, infra. That has not been done to find, and then perhaps utilize, a procedural device over and beyond those prescribed in the Federal Rules. There is no need of that, even assuming the propriety of doing so. Rather, the inquiry is to determine whether through modifications in its procedural mechanisms, Louisiana has modified the rigors of this substantive rule which confessedly seems to have little to offer in its support and which, as Linkenhoger, supra, reflects, often brings about harsh results with no compensating benefits.[11]

Undoubtedly there were many who thought that that was precisely one of the major purposes and effects of the 1954 Third Party Practice Act. Designed as it was to extricate the law from the deficiencies in the old system of Calls

---

10. Art. 2103 of the LSA–Civil Code expressly provides: "The obligation contracted *in solido* towards the creditor, is of right divided amongst the debtors, who, amongst themselves, are liable each only for his part and portion."

Of this one commentator stated: "The right to contribution among solidary obligors has been litigated chiefly in a context of joint tortfeasors. Common law accessions to that area have completely altered the rule of Article 2103. From the relatively simple rule of the Article it has been anomalously developed into one of limitless complexities. The subject defies presentation in this restricted article, but has been adequately covered elsewhere. Note, 1 Louisiana Law Review 235 (1938); Note, 4 Louisiana Law Review 451 (1943); Malone, Comparative Negligence — Louisiana's Forgotten Heritage, 6 Louisiana Law Review 125 (1945); Note, 7 Louisiana Law Review 592 (1947); Note, 9 Tulane L. Rev. 125 (1934); Holloman, Contribution between Tort-Feasors: Treatment by the Courts of Louisiana, 19 Tulane L. Rev. 254 (1944)." Substantive and Procedural Aspects of Joint Several, and Joint and Several Obligations, 14 La. Law Rev. 828 at 856 (1954).

11. In Kahn v. Urania Lumber Co., La.App. 1958, 103 So.2d 476, at page 481, that Court rejects the universal criticism of the Louisiana rule by text writers and scholars. In the civil law system, in contrast to the common law which attributes predominant significance to case-made law under principles of *stare decisis*, such writings are of great importance in ascertaining the application of the written code provisions. See, "A Reappraisal Appraised: A Brief for the Civil Law of Louisiana," by Professor Harriet Speller Daggett, Joseph Dainow, Paul M. Hebert, and Henry George McMahon, 12 Tulane Law Rev. 12 at 15–24 (1937). Brushing aside the adverse criticisms of the writers, the Court states: " * * * these articles make no mention of public policy. This principle, we think, constitutes a real reason warranting denial of contribution between joint tort-feasors as such." Earlier the Court had said the " * * * reason for the rule of non-contribution among joint tort-feasors is founded upon public policy that no one can allege his turpitude or claim an advantage for his own wrong. * * *." 103 So.2d 476, at page 481. If that really were the public policy, then contribution as between joint tort-feasors who are jointly sued in the same suit would be forbidden as well. Of course, that is not the Louisiana law.

In Warranty and especially the restrictive conditions going directly to its substantive availability erected by cases similar to Bank of Baton Rouge v. Hendrix, 1940, 194 La. 478, 193 So. 713, the early decisions under it gave evidence that this hopeful expectation was well founded.[12]

The first was Automotive Finance Co. v. Daigle, La.App.1955, 80 So.2d 579, in which Judge Tate reviewed the history of the Third Party Practice Act and reversed a refusal of the Trial Court to allow an impleader of the original payee and transferor of a note given in payment of an automobile. This was based both upon a claim by the defendant against "his warrantor," see note 7, supra, and also on the clause which tracks the Federal Rule as one "who is or may be liable to him for all or part of the principal demand." This was followed in a similar case by Motors Securities Co. v. Hines, La.App.1956, 85 So.2d 321, 323. Judge Gladney remarked, "Manifestly, the adoption of the Third-Party Practice Act * * * came as a result of dissatisfaction with procedural limitations encountered in actions relating to personal warranty arising under C.P.Art. 378 * * *." Referring to Judge Tate's opinion he went on, "[This] viewpoint * * * is consistent with the end sought to be achieved by the authors of the

12. By Act 335 of 1948, the Louisiana State Law Institute was directed to make a complete revision of the Code of Practice. After years of hard labor culminating in the preparation and submission to the Legislature on July 1, 1959, of the Projet of the Louisiana Code of Civil Procedure, such a Code was adopted by Act No. 15 of 1960, effective January 1, 1961, LSA–C.C.P. art. 1 et seq. See, McMahon, The Louisiana Code of Civil Procedure, 21 La.L.Rev. 1, 25 F.R.D. 287, see especially 25 F.R.D. at page 308. The publications of Professor Henry G. McMahon bear a high prestige. An outstanding Louisiana legal scholar and teacher, he was one of three Co-reporters and the coordinator in the preparation of the Code.

During all of these labors, a demand was stimulated for the enactment of some changes without awaiting completion of the entire proposed Code. This was true of the Third-Party Practice Act. Based upon the recommendation of the Louisiana State Law Institute, the Legislature enacted Act No. 433, La.Acts 1954, LSA–R.S. 13:3381–3386, see note 7, supra. This subject is now found in the complete Louisiana Code of Civil Procedure in Arts. 1111 to 1116. See McMahon, Courts and Judicial Procedure, 15 La.L. Rev. 38 at 46–49 (1954). Although based in large part upon F.R.Civ.P. 14 the "specific purpose" of these recommended proposals "was to enact an even broader third-party practice than is contemplated by the Federal Rules." Automotive Finance Co. v. Daigle, La.App.1955, 80 So.2d 579, at page 581. Judge Tate's opinion fills in much of the background. The comments in the 1959 Project under Art. 1111 echo similar striking language used in the earlier interim Expose Des Motifs (see notes 2 and 3, 80 So.2d 579, at page 581): "(a) The most radical change proposed in the entire field of pleading is the discarding of our present call in warranty and the acceptance of the third-party practice of the Federal Rules in lieu thereof. * * *." The Projet of 1959 in characterizing the 1954 enactment as an accomplished fact stated: (a) Probably the most radical change made in Louisiana's procedural law in recent years was effected by La.Act 433 of 1954, discarding the call in warranty and adopting the third party action based largely upon the third party practice of federal procedure." It was similarly characterized by Professor McMahon in 25 F.R.D. 287, at page 308.

The comment to the Project points out further than "Through inadvertence the Legislature in 1954 failed to adopt the provisions of Arts. 1031 through 1040, supra, intended to apply generally to all incidental actions, including the third party action. * * * As a consequence, the rules on the subject in this Code are more complete than those embodied in the 1954 legislation."

In the interim reports leading to the 1954 enactment the Institute pointed out that the rule was "considerably broader than the third party action" of F.R.Civ.P. 14 and said this of its intended use: "The principal use of such a procedural device in Louisiana would be to pass on to a co-defendant all or a part of the judgment recovered against the defendant by the plaintiff, and by permitting the defendant to call in such third person under the demand against third parties * * *." Footnote 3, 80 So.2d 579, at page 581.

Louisiana Act, who especially desired to discard the procedural restrictions upon actions in personal warranty theretofore imposed by jurisprudence which refused to permit a defendant to call a third party in warranty unless a contract of warranty existed between the defendant and the third party sought to be called in warranty." 85 So.2d 321, at pages 323–324. Obviously, the principle epitomized by Bank of Baton Rouge v. Hendrix, supra, and the cases it cited holding that a defendant, cannot call a third party in warranty unless a contract of warranty exists was a procedural result resting upon a substantive rule. Nonetheless the 1954 procedural statute was recognized as obliterating this former, unsatisfactory and unworkable substantive principle. These cases were soon followed by Plummer v. Motors Insurance Corp., 1957, 233 La. 340, 96 So.2d 605. There in a case not involving warranty, express or implied, as between defendant and the third party defendant, the Louisiana Supreme Court allowed use of impleader to assert a claim "in quasi-contract or tort." 96 So.2d 605, at page 610. Referring to these previous cases, the Court had this to say. "One of the purposes of the third-party action is to allow a defendant in a civil action to implead one who will be secondarily liable to him if plaintiff's suit against him is successful. It is an important procedural device, the purpose of which is avoid needless multiplicity of actions." 96 So.2d 605, at page 609.

But whatever optimistic expectations there were, they were shattered by Kahn v. Urania Lumber Co., La.App.1958, 103 So.2d 476. There the defendant, the operator of a truck negligently causing the decedent's death, sought to implead the owner-operator of the other vehicle involved in the collision. Starting with the premise that the substantive Louisiana rule was correctly stated by us in Linkenhoger, supra, the Court holds that the " * * * statute is clearly procedural in character and a study thereof discloses no intention on the part of the Legislature to effectuate a change in the

substantive law as pertains to the right of contribution as between joint tortfeasors * * *." 103 So.2d 476, at page 481.

There is much to indicate that perhaps the Court was influenced in this conclusion by an uncritical reliance on one phase of Linkenhoger. The opinion points out "In the Linkenhoger case it was recognized that no substantive rights were conferred by the procedural statute." 103 So.2d 476, at page 481. The procedural statute there involved was, of course, F.R.Civ.P. 14. This comment was accurate, but it overlooks two significant factors. First, under the congressional scheme in the enabling Act, the Court was empowered to promulgate rules of procedure only having no substantive impact. 28 U.S.C.A. § 2072. Second, and of greater importance, Erie for constitutional reasons prohibits the Federal Courts from adopting procedural rules for diversity cases which operate to alter substantive rights. What was true of the establishment of the Federal Rules of Civil Procedure through the joint operation of the congressional enabling act and the promulgating order by the Supreme Court does not exist so far as the Legislature of Louisiana is concerned. When it legislates it is neither less, nor more, powerful when dealing with procedural rather than substantive matters, or vice versa. State legislation may, and often does, at one and the same time work a change in procedure though enacted primarily as substantive. Or it may bring about a significant change in substantive law when enacted primarily as a procedural change. Of course, it has the power to do one without the other so the question comes back finally to one of assaying the legislative purpose and intent.

That introduces a further and most interesting complication. For by Art. No. 30, § 1, 1960, the Legislature amended Art. 2103, see note 10, supra. This amendment permits such impleader[13] and it legislatively overrules Kahn

13. "Art. 2103. When two or more debtors are liable in solido, whether the obliga-

tion arises from a contract, a quasi contract, an offense, or a quasi offense, it

v. Urania Lumber Company.[14] It is evident that in 1960 the Legislature intended the Third Party Practice Act of 1954, now a part of its comprehensive Louisiana Code of Civil Procedure, to permit impleader of joint tort-feasors. It may be more than that. It may be a declaration now that its intention earlier (1954) was so clear that there should have been no question about it. Cf. N. L. R. B. v. Drivers, Chauffeurs, Helpers, Local Union No. 639, 1960, 362 U.S. 274, at page 291, 80 S.Ct. 706, 4 L.Ed.2d 710.

We do not undertake to decide that neat and delicate question. Nor do we question at this stage the binding effect of Kahn as the latest and most authoritative expression of Louisiana Courts under Erie. See National Surety Corp. v. Bellah, 5 Cir., 1957, 245 F.2d 936, at page 941, and Bernhardt v. Polygraphic Company of America, 1956, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199; Sullivan v. Shell Oil Company, 9 Cir., 1956, 234 F.2d 733, at pages 741–742 and note 4. A precise determination is not required in the present posture of this case. We have previously pointed out that the impleader must be allowed to permit the assertion of the claim based on contractual indemnity. Likewise, it must be permitted under the claim for indemnity based upon the Appalachian and related tort principles. Additionally, impleader must be allowed to determine whether the actual facts amount to nothing more than a claim of contribution so that a claim will not exist in fact under the tort indemnity theory. This itself is sufficient to allow impleader even though on the full development of the facts, no basis for recovery could be made out. 3 Moore, Federal Practice § 14.11 at 428.

In any event, as to either one or both of the claims based on contractual indemnity and tort indemnity the underlying evidentiary facts will be identical. Moreover, such facts will be identical on a theory of contribution. All that will vary will be the operative legal effect of such facts when and as found. Under some theories HANO might recover in whole or in part. On others it might recover nothing from Busy Electric. But that will depend upon the applicable principles of law to be applied to those facts as found. By the time this case is tried upon its merits, it may well be that Louisiana Courts will have spoken further as to this problem. Consequently this case is an ideal one for the use of the flexible mechanism of special interrogatories with appropriate instructions under F.R. Civ.P. 49(b). We have often suggested their use to accommodate the final, legal judgment to contingent developments in the undulating, underlying substantive law. See Warren Petroleum Co. v. Thomasson, 5 Cir., 1959, 268 F.2d 5, at page 9, note 3; Vickers v. Tumey, 5 Cir., 1961, 290 F.2d 426, at pages 432, 435, 1961 A.M.C. 1173, notes 9 and 4; Clegg v. Hardware Mutual Casualty Co., 5 Cir., 1959, 264 F.2d 152.

With the evidence on all the issues— those clearly in the case under existing substantive Louisiana law as well as those perhaps contingently in the case

should be divided between them. As between the solidary debtors, each is liable only for his virile portion of the obligation.

"A defendant who is sued on an obligation which, if it exists, is solidary may seek to enforce contribution, if he is cast against his solidary co-debtor by making him a third party defendant in the suit, as provided in Article 1111 through 1116 of the Code of Civil Procedure, whether or not the third party defendant was sued by the plaintiff initially, and whether the defendant seeking to enforce contribution if he is cast admits or denies liability on the obligation sued on by the plaintiff. (As amended Acts 1960, No. 30, § 1.)." The amendment became effective January 1, 1961.

14. The explanatory note by Henry G. McMahon in West's LSA–Civil Code 1960 states: "Amended on the recommendation of the Louisiana State Law Institute to provide a substantive law base for the enforcement of contribution among join tort feasors through the third party demand. This article, as amended, implements Art. 1111–1116, LSA–Code of Civil Procedure, and overrules legislatively Kahn v. Urania Lumber Co., La.App. 1958, 103 So.2d 476."

depending on ultimate developments in the Louisiana decisions—being the same, no prejudice can result. A precise delineation by judicially determined facts will permit the Trial Court, and in the event of appeal, the Appellate Court, to enter the correct final judgment on the basis of the Louisiana law ultimately determined to be applicable to this injury occurring August 4, 1958.

Reversed and remanded.

CAMERON, Circuit Judge (dissenting).

If I felt that this Court had jurisdiction of this appeal, I would be constrained to concur in the result reached in the able and lucid opinion of the majority. But I do not think that the judgment before us is one from which appeal should lie. It is important to keep in mind that final judgments are appealable only if made so by statute. Basically, judgments of district courts are appealable to this Court only if they dispose of all of the issues as they relate to all of the parties.

The judgment here before us disposes of only one issue as to which the plaintiff, who brought the action and ought to have major control over the route it takes, is, so far, an uninterested bystander. Unless the third party practice vests those who participate in it with a stature superior to that of the party whose action this is,—and I do not understand that the majority opinion so infers—I think prior decisions of this Court have decided the issue before us in a way with which this decision is at war.

Meadows et al. v. Greyhound Corporation, 5 Cir., 1956, 235 F.2d 233, furnishes, in my opinion, a good illustration, although the majority does not consider it contrary to its present holding. Meadows et al. claimed that Greyhound and the driver of the car, which collided with the bus on which they were passengers, were liable to them for personal injuries negligently inflicted upon them. The trial court granted Greyhound's motion for summary judgment, leaving the action pending as between Meadows et al.

and the driver of the other car. There was no doubt that the judgment was final as between Greyhound and appellants, or that it afforded adequate basis for a plea of res judicata on Greyhound's part. The trial court certified that there was no just reason for delay, and directed the entry of a judgment as between Meadows et al. and Greyhound. Nevertheless we held that the judgment in favor of Greyhound was not appealable and dismissed the appeal. I think the principles upon which that case was based are controlling here and require that we dismiss this appeal. And compare King v. California Co. et al., 1955, 224 F.2d 193, and King v. California Co. et al., 1956, 236 F.2d 413, where the reasons underlying this course of action are discussed.

I think that the appellate courts have too much important work to do to warrant displacing it by consideration of piecemeal appeals such as I consider this one to be, upon which the majority has manifestly done a large amount of work. I therefore respectfully dissent.