**TEXAS GULF SULPHUR COMPANY,**
Appellant,

v.

**BLUE STACK TOWING COMPANY**
et al., Appellees.

No. 19832.

United States Court of Appeals
Fifth Circuit.

Feb. 7, 1963.

James E. Lehan, Tampa, Fla., James H. Simonson, New York City, Thomas C. MacDonald, Jr., Tampa, Fla., for appellant.

Seth Dekle, John R. Parkhill, Paul Game, Tampa, Fla., Marvin Schwartz, New York City, Cody Fowler, James O. Davis, Jr., Dewey R. Villareal, Jr., E. B. Good, C. J. Hardee, Jr., Tampa, Fla., for appellees.

Before BROWN, GEWIN and BELL, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

This is an appeal by a damage Claimant from a refusal of the District Court to allow the filing, nunc pro tunc, of a claim in a limitation of liability proceeding, 46 U.S.C.A. § 183 et seq., subsequent to the entry by the Court of an order of default as to all persons not filing claims. The Court simultaneously denied the parallel motion to set aside the decree of default. As the Appellant does not satisfy the heavy burden of showing an abuse of discretion, we affirm in principle although we modify the order to ameliorate some of the hardship.

On January 13, 1961, Petitioner's ARIZONA SWORD, formerly a powered vessel, but then operated as a seagoing barge, while in tow of Petitioner's Tug SALLY R, sank off the coast of Florida. She went down with a loss of all hands, and her full cargo of bulk sulphur. A Coast Guard hearing was held in mid-January attended by counsel representing the owner of the vessels and also the cargo interests. Written notice of some claims were shortly given, including one asserting a cargo claim by Texas Gulf Sulphur Co. One knowing the maritime-juridical facts of life would therefore have considerable grounds for expecting a limitation of liability proceeding to be filed by mid-July 1961 to comply with the 6-month provision. 46

U.S.C.A. § 185. Just *where* such proceeding would be instituted was, of course, unknown. Supreme Court Admiralty Rule 54. But this doubt was soon dispelled by two suits on behalf of surviving beneficiaries of two crew members filed in the Florida State Courts within the geographical confines of the Southern District of Florida.

A petition for limitation of liability in traditional form was filed in the Tampa Division on February 17, 1961. An ad interim stipulation was filed and approved in the amount of $172,600 representing the pending freight on the ARIZONA SWORD and the value of the Tug SALLY R. With acustomed multiplicity, orders in the usual form, Pershing Auto Rentals, Inc. v. Gaffney, 5 Cir., 1960, 279 F.2d 546, 1960 A.M.C. 1287, were entered, including the monition and the injunction against suits or actions by any person having a claim except in the limitation proceeding. 3 Benedict, Admiralty §§ 515, 516 (Knauth ed. 1940). The time for filing claims was fixed at March 31, 1961. Notice of the monition was published in a Tampa newspaper for four weeks, and on February 20, 1961, Petitioner by registered mail transmitted a copy of the notice of monition to every person known to have any claim. Admiralty Rule 51. The compliance affidavit reflects categorically that such a notice was sent to "Texas Gulf Sulphur Company, Inc., 75 East 45th Street, New York 4, New York" as well as to numerous death claimants and their respective proctors. Again on March 2, 1961, a brief notice of amendment to the petition was sent to all claimants including Texas Gulf. It is also uncontradicted that those two notices were physically received by Texas Gulf, but nothing was done until months later. Thereby hangs the tale and, to some extent, this claim.

In the meantime, there was much activity in the limitation proceeding. On March 1, 1961, an amended petition was filed; March 22 answers and claims of death claimants were filed; April 7, petitioner filed superfluous objections to the claims. Admiralty Rule 52. On April 28 proof was filed showing compliance with notice to proctors for claimants under Rule 52. Of course Texas Gulf was not listed as no claim had been filed. On May 9 Petitioner filed a motion for an order noting the defaults of all persons not filing claims. 3 Benedict, Admiralty § 521, p. 548 (Knauth ed. 1940). This was accompanied by a verified showing of compliance with Rule 51. On application filed July 11, the Clerk on July 13 formally noted default. On the same day the Court entered an order defaulting all persons not theretofore filing claims. It was not until December 13 that Texas Gulf made any appearance or filed any paper. On that day it filed a motion for leave to file the claim nunc pro tunc as of a date prior to March 31, and on January 2, 1962, it filed a formal motion to set aside the order of default of July 13.

These motions with annexed affidavits constitute the sole justification for delay. It is an understatement to characterize the revelations as unusual. In a nutshell they show that the New York proctor handling the potential claim for cargo interests made frequent inquiry of undisclosed persons at Texas Gulf's New York office as to whether any notice of the filing of a limitation of liability proceeding had been received. Simultaneously he reminded them to notify him of the receipt of any such notice without delay. At Texas Gulf, however, all was supine, if not serene.

Proctors for cargo interests became aware of the limitation proceedings when Petitioner's counsel called on Texas Gulf to indemnify the owner of the vessels and take over the defense of the death claims presumably because of the negligent stowage of the sulphur on the ARIZONA SWORD.

Inquiry at Texas Gulf confirmed that a receptionist in its office had signed the return receipt accompanying each of the registered notices of February 20 and March 2, 1961. In the ordinary routine, it was her responsibility to take such registered envelopes to the

Accounting Department where they were to be given to the Comptroller who was in turn to pass them to the department concerned (here the Legal Department). No one knows what happened to either one or both of these registered envelopes or their contents.

Based upon these limited, but extraordinary, papers the Court heard, and later reheard, with no further evidence but prolonged argument the cargo interests' motion for permission to file a late claim. The owner of the vessels as Petitioner took a neutral position. The motions were vigorously resisted by the surviving beneficiaries of the six death claimants. Their position was the simple one that if Petitioner's right to limit was successfully maintained, the amount for distribution ($172,600) was nowhere sufficient for these death claims. Consequently, to permit the cargo to assert its $140,000 claim would subject widows and orphans to a substantial loss for the benefit of an inexcusably careless and negligent claimant. Moreover, in that predicament, with the uncertainties as to the status of the ARIZONA SWORD as a "seagoing vessel," the death claimants could not reliably count on the addition of another $189,660 under the $60 per ton provisions of § 183 (b) (f). Additionally, they urged, and the Judge could see, that Texas Gulf was not really the party sustaining any loss from the default. Affirmatively disclosed and at least thrice emphasized by proctors for the cargo interests was the fact that Texas Gulf had been paid by its cargo underwriters. Consequently, they argued, the underwriters were the ones that sustained the loss, first by the initial maritime casualty, and now made irretrievable by a judicial casualty. Accepting that thesis, the death claimants countered that the relief sought was one which would make them suffer because of the careless failure of an assured to live up to the express or implied terms of an insurance policy. Weighing these matters, the District Court after an extended hearing found a want of good cause. The Judge adhered to this on a like extended rehearing.

We affirm this. We do so on the merits since we reject the contention of the death claimant Appellees that under Admiralty Rule 39 the Court lacked power to set aside the default on the application made more than 60 days after entry of that decree. We do not rest this conclusion on any distinction between a final as distinguished from interlocutory default decree. Cf. Colonial Press of Miami, Inc. v. The Allen's Cay, 5 Cir., 1960, 277 F.2d 540, 542, note 6, 1960 A.M.C. 1598; Koufopantelis v. Cia. De Nav. San George, S. A., 2 Cir., 1961, 291 F.2d 709. Nor do we make a broad holding that Rule 39 does not apply to limitation proceedings. Rather, we put it on the express language of Rule 51 that the Court "for cause shown, may enlarge" the time in which the claim must be filed. This Rule, amended expressly in this and many other respects, was adopted in 1948.

In assaying the merits, we reaffirm the view many times expressed that the Admiralty is administered with equitable liberality and a simultaneous freedom from restraints or frustrations occasioned by technicalities or formal imperfections. Bombace v. American Bauxite Co., 5 Cir., 1930, 39 F.2d 867, 869, 1930 A.M.C. 826; Petition of N. J. Barging Corp. (Perth Amboy No. 1), S.D.N.Y., 1959, 168 F.Supp. 925, 928, 1959 A.M.C. 2532. Consequently, we readily accept the guiding principle elucidated by Benedict that "so long as the limitation proceeding is pending and undetermined, and the rights of the parties are not adversely affected, the court will freely grant permission to file late claims * * *" upon a showing of the reasons therefor. 3 Benedict, Admiralty § 518, p. 542 (Knauth ed. 1940). Several factors work in this direction. One certainly is the short limitation period which may be, as it was here, as short as 30 days. Rule 51. Another is that no formal process is served by the Marshal or a specially deputized person. Un-

der the system, notice is to be brought home by a publication—often in a port or place remote from the claimants—plus the notice by mail of the type involved here.

■ But it must be remembered that relief from a tardy claim is not a matter of right. It depends upon an equitable showing. United States v. Maryland Casualty Co.; United States v. Hybernia National Bank, 5 Cir., 1956, 235 F.2d 50, 53, 1956 A.M.C. 1822; Compania Anonima Venezolana De Navegacion v. A. J. Perez Co., 5 Cir., 1962, 303 F.2d 692, 698, cert. denied 83 S.Ct. 321, 9 L. Ed.2d 276. In this delicate area it is not for us to determine what any one or all of us might have done had the problem been presented to us as trial judges. We may well differ in the assessment of the competing factors. Cf. Cargill, Inc. v. Compagnie Generale Transatlantique, 5 Cir., 1956, 235 F.2d 240, 243, 1956 A.M.C. 1545. The instances in which we can declare that the action is so lacking in reason as to constitute an abuse of discretion will be, as they have been, rare indeed. See Meyer v. New England Fish Co., 9 Cir., 1943, 136 F.2d 315, 1943 A.M.C. 823, cert. denied, 1943, 320 U.S. 771, 64 S.Ct. 83, 88 L.Ed. 461; The Clio, 2 Cir., 1949, 172 F.2d 351, 1949 A.M.C. 218. Applying equitable principles, late filing is often permitted. The Sandgate Castle, S.D.N.Y., 1940, 35 F.Supp. 458, 1940 A.M.C. 428; Petition of Lackritz, S.D. N.Y., 1940, 1940 A.M.C. 434. Under other circumstances, it is denied. The Poling Bros. No. 6, E.D.N.Y., 1943, 51 F.Supp. 375, 1943 A.M.C. 753; Brooks v. United States, E.D.Va., 1944, 56 F. Supp. 743, 1944 A.M.C. 1274.

■■ But while we find no abuse of discretion in denying the relief as sought, we think that these very same equitable principles call for the amelioration of some of the rigors of this result. The death claimants have no right to insist that the cargo claim be lost forever. In the event the Petitioner suc-cessfully maintains its right to limitation, they are sufficiently protected if the order prescribes that with respect to the limitation fund represented by the ad interim stipulation, the supplementary $60 per ton surrender if ultimately required, or both, the claim of cargo interests is subordinate to that of the death claimants. In the event exoneration and limitation of liability is denied (Rule 53), it will be sufficient to give death claimants priority as to the limitation fund (including tonnage supplements if required) under the principles established in the Bolikow, Hartford Accident & Indemnity Co. v. Southern Pacific Co., 1927, 273 U.S. 207, 47 S.Ct. 357, 71 L.Ed. 612, 1927 A.M.C. 402; 3 Benedict, Admiralty § 535, pp. 588–90 (Knauth ed. 1940). But apart from this special fund, the death claimants in such event should have no general priority in the race for assets of the Petitioner. On this hypothesis the cargo claim as filed below in the limitation proceedings constitutes a timely filing under the 1-year limitation of Carriage of Goods by Sea Act, 46 U.S.C.A. § 1303(6), imported into the charter party. Nothing which the cargo interests have or have not done with such non-limitation proceeding claim will have prejudiced or jeopardized the death claimants. Cargo's tardiness in the limitation proceeding does not give them the right to insist on advantages outside of that proceeding. Equitable principles akin to laches may not be pressed that far. Point Landing, Inc. v. Alabama Drydock & Shipbuilding Co., 5 Cir., 1958, 261 F.2d 861 at 865, 1959 A.M.C. 148.

■ Since the injunction prohibited the filing and prosecution of independent suits outside the limitation proceeding, fairness requires that specific provision be made for cargo's rights once it is finally determined that the vessel owner is not entitled to limitation. And this seems especially important in view of the charges and counter charges of fault against cargo. All of these can be resolved in one proceeding at one

**364**

time. Cf. The Duke of York (British Transport Commission v. United States), 1957, 354 U.S. 129, 77 S.Ct. 1103, 1 L. Ed.2d 1234, 1957 A.M.C. 1151.

To effectuate these conclusions, counsel are directed to jointly prepare a proposed decree for inclusion in this Court's mandate.

Modified and as modified, affirmed.