**FEDERAL DEPOSIT INS. CORPORATION v. ALKER et al.**

No. 8805.

Circuit Court of Appeals, Third Circuit.

Argued June 6, 1945.

Decided Nov. 7, 1945.

Stanley Folz, of Philadelphia, Pa. (A. B. Geary, of Chester, Pa., Maxwell Strawbridge, of Norristown, Pa., and Harry J. Alker, Jr., and David Bortin, both of Philadelphia, Pa., on the brief), for appellants.

Allen S. Olmsted, 2d, of Philadelphia, Pa. (Francis C. Brown and Irving H. Jurow, both of Washington, D. C., on the brief), for appellee.

Before BIGGS, MARTIN, and McLAUGHLIN, Circuit Judges.

BIGGS, Circuit Judge.

The suit at bar was brought by Federal Deposit Insurance Corporation against the defendants pursuant to the provisions of § 12B(j) of the Act of June 16, 1933, 48 Stat. 168, 12 U.S.C.A. § 264(j). The plaintiff seeks to recover a deficiency judgment against the defendant, Alker for a balance due from him on a demand note, an adjudication that neither the defendant Mamie DuBan, executrix of the estate of Alfred A. DuBan, nor the estate has any interest in

4,400 shares of the common stock of National Dairy Products Corporation pledged by Alker with Integrity Trust Company as collateral for the loan represented by Alker's note or the dividends thereon declared since Nov. 20, 1942, and a decree requiring National Dairy to transfer the stock upon its books to FDIC and to pay FDIC all dividends accrued since a specified date. The defendants filed answers. The case was tried to the court and judgment was given for the plaintiff.[1] The defendants, with the exception of National Dairy, have appealed.

Briefly, stated, the pertinent facts are as follows: In October, 1929, Alker had a large broker's loan secured by marketable collateral. The Integrity Trust Company took the loan over from the broker. Two demand notes totalling $592,150 were given by Alker to the Trust Company. Prior to September, 1931, the collateral held by the Trust Company as security for the loan included 3,400 shares of common stock of National Dairy owned by Alfred A. DuBan who had loaned them to Alker so that he might employ them as security. By September, 1931, the collateral had become worth less than the loan and the Trust Company desired additional collateral. Alker and Fischer, a director of the Trust Company, called at the Trust Company and conferred with certain of its officers.

The evidence of what took place at this conference is conflicting. We will assume that the officers of the Trust Company agreed that if DuBan would put up 1,000 more shares of National Dairy Stock as additional security for the loan and Alker continued to pay the interest thereon, assigned certain insurance policies to the Trust Company and certain fees due him from the Commonwealth of Pennsylvania, the Trust Company would not disturb the loan or the collateral until security values had risen to such a point that Alker could recover his "equity". We will assume further that there was a valid oral contract to this effect and that Alker and DuBan did everything required of them by this contract. But no record of a "side" contract or agreement relating to Alker's notes appears on the books of the Trust Company. There was no mention of such an agreement in letters passing between the Trust Company and Alker and DuBan though at least two letters refer to the assignment of fees by Alker. Nothing relating to any contract was endorsed on the notes. The minutes of the meetings of the executive committee and of the board of directors of the Trust Company are silent as to the contract which we have assumed was made. The bank examiners who examined the books of the Trust Company over a period of years found no notation of it. No officer of the Trust Company made any statement to any examiner that there was an agreement in respect to the Alker loan. Moreover, when the additional 1,000 shares of National Dairy stock were put up as collateral DuBan gave to the Trust Company a power in the usual form authorizing it to treat the shares as if it was the absolute owner of them. The power contained no reference to the oral contract which we have assumed existed.

In December, 1936, the notes were consolidated into one demand note given by Alker in the sum of $564,367.51 and the collateral was transferred to it. On November 12, 1938 DuBan died and letters testamentary were granted to the defendant Mamie DuBan as executrix. On January 13, 1940 the Trust Company pledged the note and the collateral with all its other banking assets, with certain immaterial exceptions, as security for a loan of about $20,000,000 made to it by FDIC. The Alker note was endorsed and delivered to FDIC in the usual way. The Trust Company thereupon ceased to do business as a banking institution and the Secretary of Banking of Pennsylvania became its receiver in accordance with the law of Pennsylvania. Insofar as FDIC and the Trust Company were concerned, the arrangement was the usual one made by FDIC with banks which it had insured. Authority for this course is found in the applicable federal statute. See 12 U.S.C.A. § 264(n) (4). The arrangement in all respects was identical with that which was before this court in Lamberton v. Federal Deposit Ins. Corp., 141 F.2d 95, and need not be discussed in this opinion.

On February 22, 1940, the Chief Supervisor of the FDIC wrote to Alker requesting a conference, stating that he understood that there was an oral agreement concerning the loan. The conference was held and we will accept Alker's testimony to the effect that he stated to the supervisor the terms of the oral contract as he understood them. Following this conference Alker continued to pay interest and FDIC did not call the loan. Thereafter, the Local Liquidator also had a

---

[1] No opinion for publication.

conference with Alker, respecting Alker's loan, Fischer being present. We will assume that the Liquidator was fully informed of every circumstance surrounding the loan.

In 1942 FDIC endeavored to have the shares of National Dairy stock transferred to it. Alker and Mrs. DuBan, as executrix, protested. Alker advised National Dairy that the proposed transfer was in breach of the oral contract and National Dairy at first refused to transfer the stock. Later the shares were registered in the name of FDIC as pledges. Thereafter FDIC demanded payment of the loan. On January 20, 1943, payment not having been made FDIC sold the collateral [2] including the National Dairy stock at private sale to itself for the sum of $358,336.50.

It will be apparent immediately on an examination of the opinion of the Supreme Court in D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956, how closely the facts of that case resemble those at bar. The differences which exist are immaterial. The contract which we have assumed existed in the precise terms contended for by the individual defendants is a "secret" agreement within the ruling of the Supreme Court in the D'Oench, Duhme case. See the provisions of 12 U.S.C.A. § 264(s). As such it is not enforceable against FDIC.

Taking this view, the issue upon which the case turns is one of law and for this reason it is not necessary to remand the case for necessary and proper findings by the court below.

The judgment is affirmed.

---

[2] With certain exceptions not here pertinent.