FEDERAL DEPOSIT INSURANCE COR-
PORATION to the use of Secretary of
Banking, Commonwealth of Pennsylva-
nia, Receiver of Integrity Trust Com-
pany, to the use of Butcher & Sherrerd
and Fidelity-Philadelphia Trust Compa-
ny, Trustee,

v.

Harry J. ALKER, Jr., Mamie Duban, in-
dividually and as Executrix of the Es-
tate of Alfred Duban, Deceased, and
National Dairy Products Corporation.

Civ. A. No. 3047.

United States District Court
E. D. Pennsylvania.

June 19, 1962.

Richard C. Bull and W. Wilson White (of White & Williams), Philadelphia, Pa., for use-plaintiffs.

Robert M. Taylor and Francis E. Walter, Philadelphia, Pa., for Harry J. Alker, Jr.

LAYTON, District Judge.

■ This is an action for a deficiency judgment on a note and for other relief. Before the Court is defendants' motion for a new trial under 28 U.S.C.A. Civil Procedure Rule 60(b). This case has had a long history. The trial Court found for plaintiff in 1944 in an unreported opinion. That judgment was subsequently affirmed on appeal. 151 F.2d 907 (3rd Cir., 1945). Since then, defendants have repeatedly filed various motions for review, certiorari, new trial, etc., which are summarized in the margin, none of which have produced reversal or modification of the original judgment.[1] The present motion for new trial originally was granted by the District Court. 18 F.R.D. 496 E.D.Pa. (1955), but the Third Circuit Court issued a peremptory writ of mandamus commanding that the District Court order granting the new trial be vacated. At the same time, the Third Circuit Court filed a detailed opinion prescribing the nature of any future proceedings on the motion. 234 F.2d 113 (3rd Cir., 1956). This latest opinion of the Circuit Court is the law of the case, and governs the decision here.

■ In that opinion, the Circuit Court directed this Court to determine first of all whether it has jurisdiction even to consider a motion for new trial. It is clear from the Circuit Court's opinion that power to grant a new trial here must be found, if at all, within the four corners of 28 U.S.C.A. Civil Rule 60(b). 234 F.2d at 115. Rule 60(b) provides as follows:

"(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable

---

1. The following is a partial list of court opinions dealing with the facts at bar: Judgment for plaintiff affirmed, 151 F.2d 907 (3rd Cir. 1945). Certiorari denied, 327 U.S. 799, 66 S.Ct. 901, 90 L.Ed. 1025 (1946); five petitions for rehearing denied, 328 U.S. 877, 879, 881, 66 S.Ct. 976, 1117, 1361, 90 L.Ed. 1645, 1647, 1648; 329 U.S. 823, 830, 67 S.Ct. 28, 350, 91 L.Ed. 699, 704 (1946). Petition for Bill of Review denied, 163 F.2d 123 (3rd Cir. 1947); Petition for rehearing denied, 164 F.2d 469 (3rd Cir. 1947); Petition for rehearing denied, 169 F.2d 336 (3rd Cir. 1948); certiorari denied 336 U.S. 953, 69 S.Ct. 880, 93 L.Ed. 1108 (1949). Order granting new trial set aside, Secretary of Banking of Pennsylvania v. Alker, 183 F.2d 429 (3rd Cir. 1950); two petitions for certiorari denied, Du Ban v. Federal Deposit Ins. Co., 340 U.S. 917, 939, 71 S.Ct. 351, 489, 95 L.Ed. 663, 678; Mandamus issued directing Judge Welsh to vacate Order granting new trial Butcher & Sherrerd v. Welsh, 206 F.2d 259 (3rd Cir. 1953); four petitions for certiorari denied, Alker v. Butcher & Sherrerd, 346 U.S. 925, 74 S.Ct. 312, 98 L.Ed. 418; 347 U.S. 924, 940, 74 S.Ct. 513, 626, 98 L.Ed. 1078, 1089; 348 U.S. 939, 75 S.Ct. 354, 99 L.Ed. 736. Mandamus, which was issued at 206 F.2d 259, vacated, 223 F.2d 262 (3rd Cir. 1955). New trial granted, 18 F.R.D. 496 (E.D.Pa.1955); Mandamus issued vacating order granting new trial, 234 F.2d 113 (3rd Cir. 1956).

neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C., § 1655, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action."

In the case at bar, the Court may not consider a motion for new trial under clauses (1), (2) and (3) of the Rule (i. e., because of mistake, newly discovered evidence, or fraud) because the express terms of Rule 60(b) provide that a motion for new trial under these clauses may not be made more than one year after the judgment was entered. And the Court is powerless to extend the one year time limits imposed. Federal Civil Rule 6(b) provides:

"When by these rules * * * an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion * * * order the period enlarged * * * *but it may not extend the time for taking action under rules* * * * 60(b) * * * except to the extent and under the conditions stated [therein]." (Emphasis supplied.)

■ The present motion for new trial was made on June 16, 1955, more than 10 years after the trial Court's judgment, which was entered on November 8, 1944. It follows, then, that the only grounds for new trial available to the defendants are clauses (4), (5), and (6) of Rule 60(b).

■ Defendants have offered no evidence to prove that the judgment is void (clause 4), or that the judgment has been discharged, or satisfied (clause 5). The inquiry is thus greatly narrowed. Power to consider defendants' motion for new trial must be found, if at all, under clause (6) of Rule 60(b)—"any other reason justifying relief." And in deciding whether defendants have satisfied the standards of Rule 60(b) (6), the Circuit Court has made it clear that this Court "may not consider as reasons justifying relief under clause (6) mistake, inadvertence, surprise, excusable neglect, newly discovered evidence or fraud, the reasons justifying relief under clauses (1), (2) and (3) of Rule 60(b)." 234 F.2d at 116 n. 5.

■ At a conference, defendants were asked what evidence they would offer at a full hearing of witnesses on the motion, should this Court determine that the allegations in the motion furnish grounds to proceed with such a hearing. Defendants expressly stated they would offer nothing more than the evidence of witnesses whose affidavits and depositions are already of record, and the deposi-

tion of one John Pellini, also in the record. The only purpose of a hearing would be to test the credibility of these witnesses. Since this Court is here ruling only on the sufficiency of the allegations, all questions of credibility and fact will be resolved in a light most favorable to the moving party. Use-plaintiffs contend that even if all defendants' allegations are true (which use-plaintiffs vigorously deny), the motion for new trial nevertheless does not meet the minimum requirements of Rule 60(b) (6).

The following facts are alleged by the defendants in support of their motion, and are accepted by the Court (for purposes of this ruling alone) without question.

In October, 1929, Harry J. Alker, Jr., an attorney, had a large broker's loan secured by marketable collateral. The Integrity Trust Co. took the loan over from the broker, and Alker gave two demand notes totaling $592,150 to the Integrity Trust Co. In 1931, the collateral became insufficient and Alker gave new demand notes, in the amounts of $350,000 and $242,150 respectively, secured by additional collateral. Some of the additional collateral was supplied by a friend of Alker, one A. A. DuBan, whose widow and Executrix is a nominal party in this action. The heart of Alker's case lies in his contention that there was an enforceable agreement between himself, DuBan and Integrity providing that Integrity would not "disturb" the loan or the collateral until security values had risen to such a point that Alker could recover his "equity." The Court here assumes that such an agreement existed, although other reviewing courts, and use-plaintiffs have pointed to persuasive evidence that it did not. See 151 F.2d 907, 908 (3rd Cir., 1945); 164 F.2d 469, 470 (3rd Cir., 1947). On the back of the 1931 notes, there appear terse legends, which are the only written evidence of the nature of the agreement, assuming that it existed:[2]

> "For addtl. collateral and agreement with Alker and A. A. DuBan see other note and W.K.H."

On the other note is a legend which states:

> "For addtl. collateral and agreement with Mr. Alker and A. DuBan see W.K.H."

"W.K.H." was an officer of the Integrity Trust Co., the holder of the notes.

In December 1936, the collateral again became insufficient. A new demand note was given by Alker to replace the 1931 notes, additional stock was put up by DuBan, and an insurance policy was procured upon Alker's life, as further collateral. The 1936 note in the amount of $592,150 was given in "substitution and continuance" of the two 1931 notes. But no mention was made in the 1936 note of any agreement between Integrity and Alker. The 1931 Notes, with the legends on the back, were returned to Alker in January 1937, and remained in his exclusive possession thereafter.

In 1941, Integrity assigned the 1936 Note and collateral with its other banking assets to the Federal Deposit Insurance Corporation (FDIC) as security for a loan of approximately $20,000,000. The FDIC continued to receive interest on the Alker loan, certain assigned legal fees, and the benefit of the insurance policy on Alker's life. In 1943, the FDIC, as Liquidator, after notice, sold the collateral, and brought this action to recover the deficiency on the 1936 Note. Alker claims the collateral was sold in violation of the agreement between himself and Integrity; and that the FDIC was bound by that agreement. He has

---

2. However, these typed legends do not appear on photostats of the notes made by Integrity before the notes were returned to Alker in January, 1937. Since the Court is assuming here that the legends are authentic, it is unnecessary to discuss the theory of FDIC, distinctly antipathetic to that suggested by Alker, as to how the legends came to be upon the 1931 notes. See 164 F.2d 469, 470–71 (3rd Cir. 1947).

demanded that the sale of the collateral by FDIC be rescinded, since appreciation of the security values since the time of the sale in 1943 would have more than paid off the deficiency.

It is apparent from the foregoing that the existence of, and the nature of the alleged agreement between Alker and Integrity is at the heart of defendants' case. The difficulty with defendants' position is that all the arguments and evidence presented in this motion for new trial have been considered and rejected by previous courts. No essential argument presented here is new. The trial Court found that the alleged agreement between Alker and Integrity was lacking in essential "certainty as to proof and certainty as to the time of performance." The Circuit Court, on appeal, implied doubt that the agreement even existed, but, assuming that it did exist, found that it was a secret understanding between Integrity and Alker and was, therefore, not binding on the FDIC under the rationale of D'Oench, Duhme & Co. v. F. D. I. C., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). 151 F.2d 907 (3rd Cir., 1945). It was only at this point that Alker produced the 1931 Notes with the terse legends on the back. Apparently, these legends are supposed to demonstrate that the agreement was not secret, and therefore that the FDIC is bound by its terms. The Circuit Court has rejected this very argument in a detailed opinion, 164 F.2d 469 (3rd Cir., 1947), in which it pointed out that these notes were exclusively in Alker's possession after January 1937. At no time, were they available to the FDIC who did not take over the affairs of the Integrity Trust Co. until 1941. The FDIC cannot be bound by writings which it never had an opportunity to see.

■ The 1931 Notes (with the legends) were not offered by Alker as evidence at the trial. Alker relies heavily on a deposition of a former office employee, John Pellini, to show that the 1931 Notes were misfiled at the time of the trial, and were not found until after the judgment had been entered. But John Pellini's testimony does little more than explain why Alker did not introduce the 1931 Notes into evidence at the trial, and to buttress the authenticity of the legends on the back of the 1931 Notes. Whatever the significance of the legends, the facts conceded by Alker show conclusively that the FDIC never had any opportunity to see them. It may be that Integrity was negligent in keeping no record of the existence of an agreement not to liquidate collateral. Certainly, it is a fact that no evidence of such an agreement appears in the minutes of the bank or in any correspondence between Integrity and Alker concerning the loan. It is significant that the bank examiner, C. B. Matsinger, failed to mention the existence of an agreement not to liquidate collateral in his written reports of the condition of Alker's loan which he prepared during an examination of Integrity's accounts. But even if we assume arguendo, that Integrity was negligent in keeping its records, such negligence cannot be imputed to the FDIC without a showing that FDIC had notice of the agreement in some way. 164 F.2d 469, 470. None of the evidence furnished by defendants shows that the FDIC had written notice of the agreement. Even if all of the defendants' evidence is believed, and even if the legends on the 1931 Notes are authentic, the result of the case is not changed. Whatever the agreement may have been, if in fact there was an agreement at all, it was still a secret one so far as the FDIC was concerned, and therefore was unenforceable against them. D'Oench Duhme & Co. v. F. D. I. C., 347 U.S. 115 (1942); Federal Deposit Insurance Corp. v. Alker, 164 F.2d 469 (3rd Cir., 1947).

■ It is well settled that relief from final judgments under Rule 60(b) (6) may be granted in unusual and exceptional cases only. Federal Deposit Ins. Corp. v. Alker, 234 F.2d 113, 117 (3rd Cir., 1956); John E. Smith's Sons

Co. v. Lattimer Foundry & Machine Co., 239 F.2d 815, 817 (3rd Cir., 1956). This rule is needed to buttress the finality of judgments. There must be an end to litigation. Only extraordinary circumstances strongly moving the discretion of the Court can justify relaxation of this policy in a particular case. See generally, 7 Moore, Federal Practice ¶ 60.27 at 293–312 (1954). The requirements are particularly strong in motions invoking Clause (6) of Rule 60(b) when the motion is made more than a year after the judgment was entered. Clause (6) is a residual clause to be invoked only on the basis of some reason other than those specified in the preceding clauses (1)–(5). 7 Moore, Federal Practice ¶¶ 60.27[2] at 300 (1954). Without such a restriction, Clause (6), which may be invoked at any "reasonable" time, could be used to evade the rigid one-year time limitation on bringing petitions under Clauses (1)–(3). For examples of cases where the allegations in the petition satisfied the jurisdictional requirements of Rule 60(b) (6), see Klapprott v. U. S., 335 U.S. 601, 336 U.S. 942, 69 S.Ct. 384, 93 L.Ed. 266 (1949) (denaturalization decree entered by default more than a year previously against petitioner who could not defend himself at that time because of incarceration, poverty, and illness); In re Estate of Cremidas, 14 F.R.D. 15, 14 Alaska 234 (1953) (minor's attorney was so incapacitated by drunkenness at the trial that her claim was in effect not presented). See also U. S. v. Karahalias, 205 F.2d 331 (2d Cir., 1953). This Court has found nothing in the allegations in the motion at bar to bring it within the rule of the cited cases. None of the contentions made by defendants are even new. All substantial points have been considered and rejected by other courts, as is revealed quickly by reading previous opinions of this Court and of the Third Circuit Court cited herein. Of additional importance here is this fact: even if all of defendants' allegations are believed, defendants still have shown no legal defense to the claim. Thus, a new trial would produce only further delay with no possibility of a change in result.

The defendants also argue that this Court has no power to hear this matter, apparently because the Judge is a United States District Judge for the District of Delaware, not of the Eastern District of Pennsylvania. But this Court was specifically assigned by Chief Judge Biggs to hear and dispose of this matter. There is no merit to defendants' contention.

Motion for new trial denied.