**Leo T. MOONEY, Plaintiff-Appellant,**

v.

**CENTRAL MOTOR LINES, Inc., Defendant-Appellee.**

No. 12233.

United States Court of Appeals Sixth Circuit.

April 26, 1955.

C. Richard Grieser, Columbus, Ohio, argued, Alex S. Dombey, Columbus, Ohio, William A. Finn, Toledo, Ohio, on the brief for appellants.

Ernest C. Schatz, Toledo, Ohio, argued, Doyle, Lewis & Warner, Toledo, Ohio, on the brief for appellee.

Before MARTIN, McALLISTER, and MILLER, Circuit Judges.

McALLISTER, Circuit Judge.

The district court dismissed appellant's complaint, in a personal injury case, with

prejudice. From a denial of a petition to set aside such order of dismissal, appellant seeks review.

Appellant's claim for damages arose out of a collision at a railroad crossing between appellee's truck and a Pennsylvania Railroad train on which appellant was engineer. On the day following the collision, appellant went to the office of the claim agent of the railroad and made a statement of the accident. Subsequently, the claim agent, in an interview with appellant, in the presence of John Cox, Chairman of the Brotherhood of Locomotive Engineers for appellant's division, offered to get an attorney for him and to pay all costs and fees for appellant if he would sue the owner of the truck; and appellant agreed to accept this proposal. An attorney was secured for him, who, apparently upon information supplied by the railroad, filed suit for appellant against appellee owner of the truck in the state court in Chicago, Illinois. In an affidavit afterward filed for the purpose of setting aside the dismissal of his complaint by the district court, appellant stated that a few days after he had accepted the offer of the railroad company to secure a lawyer and start suit for him, he called Mr. Cox, the Brotherhood Chairman, and told him he was "not ready to go along with the Pennsylvania and that I wanted to get more information." A little more than a month after appellant had authorized the railroad claim agent to secure an attorney for him and commence suit, he called upon the claim agent and received a check for $300 from the railroad as an advance payment on account of his injuries, and, at that time, was told that the lawsuit had been started in his behalf. He declares that he then informed the claim agent that he was not ready to go along with the suit and would prefer settlement with the railroad first; and he states that the claim agent told him that the suit "would be 'shelved' and would remain until I was ready to go ahead with it." Seven months after this conversation, he was informed by the Brotherhood Chairman, Mr. Cox, that the

suit was coming up in Chicago and that he should see his lawyer there. He did not follow Mr. Cox's advice. He states that this was the first time he knew of the name of the attorney representing him; and he declares that he told Mr. Cox "I had no information and wanted to know where I stood before I went to Chicago." Later, appellant stated that he had heard that the case had been transferred to Toledo. He sets forth in his affidavit that he and his wife had been making plans to visit the state of Washington and proposed leaving on December 16, 1953; that a week before his planned departure, he asked the claim agent of the railroad if he could go, and was told that the agent didn't know of any reason why he could not go. However, on December 15, 1953, appellant received a letter which, he said, contained "what looked like court papers." As anyone could plainly see, they were a notice to him to appear for the taking of deposition, and an order of the court directing him to appear for a physical examination. He thereupon took the papers to the claim agent, who told him it was a subpoena. Apparently this did not impress appellant, who told the agent that he had never filed a suit against the trucking company and "knew nothing about where I stood in the case and that I would not go to Toledo." He then left for a trip of several weeks in the state of Washington.

It appears that appellant was represented, in filing his complaint, by counsel of record, and that while he did not personally select this counsel, he accepted the offer of the railroad company to retain him on his behalf. It further appears that the suit was afterward removed from the state court in Chicago to the District Court for the Northern District of Illinois; and that it was thereafter transferred to the District Court for the Northern District of Ohio, at Toledo, and that appellant knew of these facts. Subsequently, the case was placed upon the district court's regular jury assignment for trial on January 25, 1954, and scheduled for pre-trial conference in open

court on December 22, 1953. Notice of the assignment for trial and the pretrial conference was served, by mail upon appellant's attorney of record. On December 11, 1953, appellee's counsel filed a motion under Rule 35(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., for a physical examination of appellant, and at the same time, filed a notice of the taking of appellant's deposition upon oral examination. In the notice, the deposition was scheduled for 10:00 A.M., December 21, 1953, at the office of appellee's counsel in Toledo, and the physical examination, by Dr. R. C. Young, was scheduled for 2:00 P.M. on the same day at the Toledo Clinic. Copies of the notices to take appellant's deposition and for the physical examination were sent to counsel of record for appellant and to appellant himself by registered mail, and the return receipts show that they were delivered to counsel on December 12, 1953, and to appellant, on December 15, 1953.

On December 16, 1953, the district court entered an order that appellant appear at the above named physician's offices at the Toledo Clinic, at the time specified in the motion for the physical examination, and a copy of such order was served by mail by the clerk of the court upon appellant's counsel of record, as well as upon appellant. Appellant did not appear at the time and place specified in the notice for the taking of his deposition or for the physical examination, nor did he ever appear at any time thereafter for the deposition or physical examination. At the pre-trial conference held by the district court at the hour specified in the notice providing therefor, on December 22, 1953, neither appellant nor his attorney of record appeared. What communication took place between appellant and his counsel does not appear. The district court ascertained that appellant had not appeared as ordered for the physical examination; that he had not appeared for the taking of his deposition upon notice; and that no trial briefs had been filed as required by the order of the court. When neither counsel for appellant nor appellant himself appeared for the pre-trial hearing, the district court remarked that it looked as though the appellant was not even interested, and directed an entry to be drawn dismissing the complaint.

Appellant contends that the district court was guilty of abuse of discretion in refusing to amend the judgment entered so as to provide for a dismissal without prejudice. Yet appellant offered no justification for or explanation of his ignoring the notice of deposition and refusal to obey the order of the court to submit to a physical examination. The only evidence on the subject, which appears in his own affidavit, is to the effect that when he was advised to see his lawyer in Chicago when the case was coming up, and when he received the order of the court to appear, he refused to do so on the vague ground that he had "no information"; that he wanted to know where he stood; and that he knew nothing about where he stood in the case. While he was represented by counsel of record, he consulted neither such counsel nor attempted to get in touch with the court. In fact, he mentioned the matter to no one except a layman, who told him that the papers he was served with constituted a subpoena. Even this should have made him vigilant. Yet, with the notice of deposition and order for physical examination in his hands, he informed the representative of the railroad that he would not go to Toledo. Instead, he set out for the state of Washington for a pleasure trip or family visit.

Disposition of the case is governed by application of the Federal Rules of Civil Procedure. See National Discount Corp. v. O'Mell, 6 Cir., 194 F.2d 452. Rule 37 (b) (2) (iii) provides that if a party refuses to obey an order requiring him to submit to a physical examination, the court may dismiss the action or render a judgment by default against the disobedient party. Rule 37(d) provides that if a party wilfully fails to appear before the officer who is to take his deposition, after being served with a proper notice, the court on motion and notice

may dismiss the action or enter a judgment by default against the party. See Collins v. Wayland, 9 Cir., 139 F.2d 677; Peitzman v. City of Illmo, 8 Cir., 141 F.2d 956. Rule 41(b) provides that for failing to comply with these rules or any order of court, a defendant may move for dismissal of an action, and that unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue, operates as an adjudication upon the merits.

There was no showing of abuse of discretion on the part of the district court in denying appellant's motion to amend the judgment to provide for a dismissal without prejudice.

In accordance with the foregoing, the order of the district court is affirmed.