Charles T. O'TOOLE, Appellant,

v.

WILLIAM J. MEYER COMPANY, Inc., and William J. Meyer, Individually, Appellees.

No. 16121.

United States Court of Appeals
Fifth Circuit.

April 9, 1957.

Rehearing Denied May 23, 1957.

Geo. J. Baya, Miami, Fla., for appellant.

Goble D. Dean, Richard B. Adams, Brown, Dean, Adams & Fischer, Miami, Fla., for appellees.

Before RIVES, TUTTLE and BROWN, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from an order dismissing appellant's personal injury suit for failure of appellant to submit to physical examination and give his deposition as ordered by the court. It presents the interesting and important question whether the disappearance of a plaintiff after having been examined by deposition on all matters relating to liability and as to the elements of injury up to the date of the deposition deprives him of a right to trial upon the insistence of his counsel as against a motion to dismiss.

The record discloses that the damage suit was filed in August, 1950, complaining that the plaintiff, a pedestrian, had been negligently injured by defendants' automobile in February, 1949; in October, 1950, defendants took the plaintiff's deposition in which he was fully examined as to his theory of liability and as to his injury up to that date; the plaintiff subsequently in January, 1951, filed written interrogatories on defendants, which were answered in April,

1951; thereafter plaintiff took the deposition of one occupant of defendants' automobile; on April 18, 1952, the case was set for trial June 24, 1952; on June 9th defendants filed a motion to require plaintiff to submit to physical examination, and filed a notice of the taking of a deposition of plaintiff, writing plaintiff's counsel that no questions concerning liability would be asked, but "only concerning damages incurred after October 4, 1950," the date of the prior examination; the court entered an order on June 16th requiring the physical examination not less than two weeks before trial; on June 16th plaintiff's counsel filed a motion for continuance of the trial on the ground that counsel had been unable to find plaintiff in order to secure his attendance on trial, and the court continued the case by withdrawing it from the trial calendar. There then followed a series of reassignments, motions and orders for taking physical examination, failure of plaintiff to appear because of his counsel's inability to find him; an interlocutory order of a visiting judge provided that the case might be tried on plaintiff's deposition if he failed to appear at the trial; then came further settings, motions for physical examination and deposition followed by orders for such procedures, and still plaintiff's counsel failed to find him and cause him to attend. Finally, after the third failure of this sort, the trial judge set a final date for the physical examination and deposition for March 1, 1956, in default of which the case would be dismissed with prejudice; on February 29th plaintiff's counsel filed a motion to vacate this order alleging that he was still unable to find the plaintiff and moving that

he be permitted to go to trial on the depositions and other available evidence. In this motion he suggested to the trial court that it could protect the defendants' interests by instructing the jury that because of the unavailability of the plaintiff to testify and be cross-examined as to disabilities subsequent to October, 1950, they could not consider any injury or items of damages occurring subsequent to that date.

The trial court denied this motion and, reciting the failure of the plaintiff to appear for examination and deposition, sustained the defendant's motion to dismiss, presumably under the authority of Rule 37(b) (2), Fed.Rules Civ.Proc.[1]

It is apparent from the undisputed facts in this record that there is here presented an important question of federal procedure having critical effect on the substantive rights of the parties. This was no wilful or negligent failure of a party to comply with a proper order of the court. The order here entered was based on a failure of the plaintiff to comply with an order of which he had no actual notice, and the lack of notice can not be said on this record to be attributable to any fault on the part of his counsel. For all that appears this plaintiff, who as a hostler followed the horses from one racetrack to another around the country, was never aware of the necessity for his being in contact with his lawyer. It thus comes down to the question whether a plaintiff is entitled to have his suit tried if insisted on by his counsel if he fails to remain available to respond to preliminary procedural orders of the court where, as here, the defendants had ample time to take his deposition, which they did, and

1. "Other Consequences. If any party or an officer or managing agent of a party refuses to obey an order made under subdivision (a) of this rule requiring him to answer designated questions, or an order made under Rule 34 to produce any document or other thing for inspection, copying, or photographing or to permit it to be done, or to permit entry upon land or other property, or an order made under Rule 35 requiring him to submit to a physical examination, the court

may make such orders in regard to the refusal as are just, and among others the following:

$$* \quad * \quad * \quad * \quad *$$

"(iii) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party; * * *." Rule 37(b) (2), Fed. Rules Civ.Proc. 28 U.S.C.A.

where, as here, counsel conceded the right of the court to protect the defendants against any claim for damages subsequent to the date of his last appearance.

We find no authority in the Federal Rules for a holding by a trial court that a plaintiff may not have his case tried under such circumstances. The penalty imposed by Rule 37(b) (2) clearly presupposes an opportunity to comply followed by a failure to comply with the court's order.

Nor are we impressed with the justice of a refusal by a court to permit a plaintiff to have his case go to trial in his absence. Here there was ample time for defendants to take full and complete depositions to perpetuate the testimony not only of the plaintiff but also of the individual defendant and defendants' witnesses who have died during the litigation. There is nothing unusual in the absence of important witnesses from personal injury trials and in this respect the absence of a party not under subpoena is no different than that of any other. We think the proper solution of a case like this was found by the Court of Appeals for the Second Circuit in Field v. American-West African Line, Inc., 2 Cir., 154 F.2d 652. There it appeared that the plaintiff had become insane and would probably never be able to testify. He had however been thoroughly examined by depositions and the depositions of other witnesses for plaintiff and defendant had been taken. The trial court had dismissed the complaint at defendant's instance after nearly five years' delay. The appellate court approved the right of the court to do this, subject to the right of the plaintiff to proceed to trial on deposition. The opinion said:

"It does not appear whether the alternative of a trial upon the depositions was ever offered to the plaintiff's attorney; quite possibly it was. However, against the possibility that it was not, we think that if he elects to go to trial upon the depositions of his client and O'Brien, such an opportunity should now be given. The plaintiff's deposition will be competent under Rule 26(d) (3), and so will be O'Brien's if he is absent, or if his attendance is not procurable. Rule 26(d) (2) or (4). The same is true of the defendant's depositions. Obviously, either side should be free to introduce any other competent evidence procurable. Therefore, if the plaintiff's attorney elects within ten days to go to trial upon the depositions we have mentioned together with any other evidence he may present, the judgment will be reversed and the cause set for trial at the May or June, 1946, term of the district court. If the attorney does not so elect, we can see no alternative but to affirm the judgment."

We find no authority to the contrary in the single appellate court case cited by appellees, Producers Releasing Corporation de Cuba v. P. R. C. Pictures, Inc., 2 Cir., 176 F.2d 93, 96. In that case notice had been served on counsel for the plaintiff corporation to have its president present in New York for deposition on a certain date; this was ignored, and in opposition to a motion of dismissal based on this default counsel produced an affidavit of ill-health. Thereafter a second date was set by the trial court and for the second time the order was ignored; again in opposition to a motion for dismissal counsel produced excuses of ill-health concerning which the trial court expressed considerable doubts, but it set a third date, which was also disregarded without prior objection. Thereupon the trial court dismissed the complaint. The appellate court there said:

"* * * The belated showing as to the ill-health of Mr. Pecchio himself after two defaults—disregard of the notice of March 15 and disobedience of the order of May 24—without any attempt to make such a showing prior to either of these defaults, justified, in our opinion, Judge Hulbert's skepticism as to the excuse of illness and would

support an order of dismissal based on the two prior defaults."

This record shows no such disregard of the court's orders, since it is undisputed that from 1952 counsel have been unable to find the plaintiff and thus notify him of the court's order.

Under the unusual circumstances here present we think the case should have been placed on the trial calendar and tried as requested by appellant's counsel. The difficulties attendant upon the disposition of any judgment or the proceeds thereof must remain for solution in the light of the facts as they then exist. There is no presumption that the appellant is dead and he is entitled to have his cause heard in the absence of any showing that he has wilfully or knowingly made impossible the effectiveness of the court's orders for the taking of his further deposition and for his physical examination.

The judgment is reversed and the case remanded for further proceedings not inconsistent with this opinion.

JOHN R. BROWN, Circuit Judge (concurring in part and dissenting in part).

I concur[1] in reversal for, as the opinion so well reflects, the Judge's dismissal assumed that the plaintiff, either from defiance or neglect, repeatedly ignored or disobeyed orders of the court when, of course, as a nomadic horseman, there is no indication that he ever knew of them.

While, it is possible to read into the repeated orders an implied finding, F.R. C.P. 35, that the Judge was of the opinion the case could not fairly be tried in the absence of further medical examination (and depositions), I do not think that that took place at all. I think he, as did counsel, treated the requests as routine and thought that so long as it was ordered and not obeyed, the Judge could summarily dismiss.

This leads me to my point of departure. I think that for us now to order a trial is an intrusion into functions left by the Rules to the wise discretion of the District Judge, at least in the first instance. He ought to have the right to determine, F.R.C.P. 35, with the plaintiff not available nor any likelihood that he ever will be, whether justice reasonably requires further medical or testimonial examinations, and if so, their extent, and if not, the real limitations (not the party's offers) which ought to be put on the case as it is tried.

He ought also to have the right to determine by the exercise of a wise discretion whether, as the Court repeatedly says, it is the *plaintiff* who wants a trial, or whether it is really the plaintiff's *lawyer* who wants the trial. Tender as Judges, ex-lawyers, are to the interests of lawyers asserting tort litigation with a likelihood of contingent fees, it is after all the client's case, not theirs.

---

1. I do so even though, from the point of administration, I am apprehensive that these holdings on procedural matters, inherently flexible by nature, are turned into the rigid command of the law of the Medes and Persians, cf. Cargill, Inc., v. Compagnie Generale Transatlantique, 5 Cir., 235 F.2d 240, 1956 AMC 1535, merely because we have delivered it.

The Second Circuit, Fischer v. Dover Steamship Co., 2 Cir., 218 F.2d 682, 1955 AMC 1008, and other courts, Mooney v. Central Motor Lines, 6 Cir., 222 F.2d 569; Alevizopoulos v. Central American Agency, D.C.N.Y., 137 F.Supp. 689, 1955 AMC 2239, have held that it is the duty of the client to keep in touch with his case (and lawyer) and if he does not do

so, he is charged with a "failure," F.R. C.P. 37(b), 41(b), warranting dismissal. The Fifth Circuit encompasses many ports. Many of its district courts have extensive maritime cases involving seamen of all nations who wander over the Seven Seas and whose only address will be a next of kin, years and degrees removed. May district judges dismiss these cases as Proctors candidly inform the court that clients have vanished? Are we in each case to say to district courts that the only "relief" is not to dismiss, but to try the case? How many years must the Judge listen to lawyers repeat advices on the disappearance (here it was four years)?

A plaintiff certainly can abandon a case, 5 Am.Jur., Attorneys at Law, § 118, and if he has, a Judge under the Federal Rules is entitled to and ought to dismiss it. And if the litigant abandons it, the lawyer's hope of reward is an insufficient transfusion to keep it alive.

I think this Judge ought to have the right on this record, supplemented below as fully as all parties might desire, to determine whether four years of complete silence, evaporation into eternity, or complete and untraceable disappearance of this race track camp-follower establishes that he has in fact abandoned his suit and that, not O'Toole, but his apparent counsel and the Horseman's Welfare and Protective Society who paid out several thousand dollars of hospital bills under some private insurance arrangement are now the real litigants.

Subrogation is certainly legitimate and recognized, but if it is that, then the trial Judge with no anticipatory interference from us should determine whether it can appear under the engaging name of O'Toole or must come to Court riding under its own colors, F.R.C.P. 17(a), at least to the extent of what it has laid on the line. United States v. Aetna Casualty & Surety Company, 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171; cf. United Services Automobile Association v. Russom, 5 Cir., 241 F.2d 296; Celanese Corp. of America v. John Clark Industries, 5 Cir., 214 F.2d 551.

O'Toole may have decided the case was unjustly brought for the record indicates one of dubious liability. Or he may have forgotten about it. Or he may have, with the inveterate optimism of his band, finally selected the right horse at the right time so that money is no longer wanted or needed. Or he may be dead in fact (even though the law's fiction at the present time gives him a few more months life under the seven years rule).

If he doesn't want to press his lawsuit, then neither the Rules nor the supervisory powers of this Court can compel him to do so. If he is dead, then many new things come into play.

The Court ought to be able to determine *who* is in his courtroom—O'Toole, O'Toole's Ghost, the Horseman's Welfare Fund, or a lawyer pursuing a perfectly legitimate practice, but who has suffered the misfortune of having the client, the party—the only means by which the courthouse door is open—ride off into the great unknown.

Ordering a trial now in terms sketchily indicated displaces a District Judge on matters not yet determined and which we are neither suited nor empowered to determine *nisi prius*.

For that, I respectfully dissent.