The judgment of the district court will be affirmed.

8. We note that the present Devitt and Blackmar instruction on entrapment makes no reference to "lawful entrap-

ment." 1 E. Devitt and C. Blackmar, *supra* at note 5.

---

Gloria M. LOHMAN, Appellee,

v.

GENERAL AMERICAN LIFE INSURANCE COMPANY, Appellant,

and

Federal Deposit Insurance Corporation and Federal Deposit Insurance Company as Statutory Receiver of Cedar Vale National Bank, Appellees.

No. 72-1123.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 13, 1972.

Decided April 20, 1973.

million in bogus notes at Cedar Vale National Bank in Kansas, alleging plaintiff and her husband were parties to the fraud, and that the entire estate was liable therefor. The FDIC also cross-claimed against defendant praying that the court impress a "constructive equitable trust" in its favor, and grant judgment for all funds owing under the insurance policy issued by defendant.

At the trial, the only issue for the jury was whether Lohman's death was accidental. The jury found that the death was accidental, and judgment was entered against defendant-appellant on the verdict. We affirm.

Before discussing the facts and merits of the case, we shall deal with a procedural question raised by appellant as the first issue of its appeal.

After a dismissal of plaintiff's case by order of April 16, 1971, of the District Court, plaintiff filed notice of appeal with this court, which dismissed the appeal by order of June 15, 1971, on motion by defendant, plaintiff having failed to perfect her appeal pursuant to Rule 30(b), Federal Rules of Appellate Procedure and local Rules 8 and 13. Thereafter, plaintiff filed a motion in the District Court to amend the order of the District Court dismissing her complaint so that she could reinstate her case. On October 15, 1971, the trial court made findings of fact as to the rights of plaintiff to maintain her action, and concluded that its prior order of dismissal was void under Rule 60(b)(4) Federal Rules of Civil Procedure, and that: "Gloria M. Lohman's original status as plaintiff in this action, be, and it is hereby shown and established as having had continuous existence since the time this action was commenced."

Appellant submits (1) that the District Court was without jurisdiction to act under Rule 60(b) upon plaintiff's motion to amend that court's order dismissing the complaint; (2) that the

Jac Chambliss, Chattanooga, Tenn., for appellant.

Robert Vogel, Mandan, N. D., and Lloyd C. Richardson, Jr., Aberdeen, S. D., for appellees.

Before GIBSON, Circuit Judge, LAY, Circuit Judge, and DURFEE,* Senior Judge of the United States Court of Claims.

DURFEE, Senior Judge.

This is an appeal from a judgment of the United States District Court for the District of South Dakota, Northern Division, in favor of plaintiff-appellee, Gloria M. Lohman, and the additional defendant-appellees, Federal Deposit Insurance Corporation and Federal Deposit Insurance Company as Statutory Receiver of Cedar Vale National Bank, and against defendant-appellant, General American Life Insurance Company.

The action was brought by Gloria Lohman as plaintiff on a double indemnity policy of insurance issued by defendant-appellant on the life of her deceased husband, William D. Lohman.

The FDIC had notified defendant it claimed the principal sum. When the case was removed from a state court to a Federal court, the FDIC was made a party by interpleader and the sum of $100,000.00 plus accrued interest was paid into court.

The FDIC counterclaimed against plaintiff to collect approximately $1.5

* Senior Judge James R. Durfee of the United States Court of Claims is sitting by designation.

District Court did not have the power to "deviate" from this court's prior mandate of dismissal of the appeal when permission to proceed was not obtained from the Eighth Circuit Court of Appeals; and (3) that the District Court erred in holding that its previous order of dismissal under Rules 37 and 41(b) was void under Rule 60(b)(4), Federal Rules of Civil Procedure. We deal with these arguments in the order presented.

For its proposition that the District Court was without jurisdiction to act under Rule 60(b), appellant relies chiefly upon Thornton v. Carter, 109 F.2d 316, 320 (8th Cir. 1940) where Judge Sanborn said, as to a decision by this court on appeal with remand to the District Court:

A mandate is completely controlling as to all matters within its compass, but on remand the trial court is free to pass upon any issue which was not expressly or impliedly disposed of on appeal. (Footnote omitted). Since, however, a final judgment *upon the merits* concludes the parties as to all issues which were or could have been decided (Guettel v. United States, 8th Cir., 95 F.2d 229, 230, 118 A.L.R. 1060 and cases cited), it is obvious that such a judgment of this court on appeal puts all such issues out of the reach of the trial court on the remand of the case. * * * [Emphasis supplied].

Appellant argues that the former decision of this court dismissing plaintiff's appeal was a final judgment on the merits, and therefore the District Court was without jurisdiction further to consider any issues.

First of all, it is clear that the District Court's initial decision was not a judgment on the merits. Even if this appellate court had fully considered the initial decision of the trial court, we in turn would not have been rendering a final judgment on the merits.

Rule 41(b) Provides:

*Unless the Court in its order for dismissal otherwise specifies,* a dismissal under this subdivision and any dismissal not provided for in this rule * * * operates as an adjudication upon the merits. [Emphasis supplied].

The District Court in its order for dismissal did "otherwise specify" by finding that plaintiff had failed to comply with the court's order to compel plaintiff to answer interrogatories, as ordered pursuant to Rules 37 and 41(b) of the Federal Rules of Civil Procedure.

A similar situation was presented in Madden v. Perry, 264 F.2d 169, 175 (7th Cir. 1959) where the court said:

We hold that, under Rule 41(b), Judge Perry, having in the order for dismissal specified the grounds therefor, which, as to the locals (Unions) did not involve the merits of the case, the dismissal order does not operate as an adjudication upon the merits.

When the appeal from the dismissal first came to this court, we did not even go so far as to consider the grounds for the dismissal. This court ordered dismissal of the appeal on the technical ground urged in motion by General American.[1] Dismissal on this technical ground can hardly be considered a "final judgment on the merits" as required by Thornton, supra. The mandate of this court dismissing plaintiff's appeal neither "encompassed" nor "disposed of" any of the issues subsequently considered by the District Court.

Appellant's reliance on Butcher & Sherrerd v. Welsh, 206 F.2d 259 (3rd Cir. 1953), cert. denied, Alker v. Butcher & Sherrerd, 346 U.S. 925, 74 S.Ct. 312, 98 L.Ed. 418, reh. denied, 347 U.S. 924, 74 S.Ct. 513, 98 L.Ed. 1078, reh. denied,

---

1. General American's motion for dismissal of the appeal was based upon the technical ground that plaintiff had not " 'served on the Appellee (General American) a designation of the parts of the record which he intends to present for review' as required by Rule 30(b), Federal Rules of Appellate Procedure."

347 U.S. 940, 74 S.Ct. 626, 98 L.Ed. 1089, reh. denied, 348 U.S. 939, 75 S.Ct. 354, 99 L.Ed. 736, vacated on other grounds 223 F.2d 262 (3rd Cir.), is misplaced. In that case there was an initial decision on the merits by the trial court and the trial court's judgment was affirmed on the merits, 151 F.2d 907 (3rd Cir. 1945). The case of Tribble v. Bruin, 279 F.2d 424 (4th Cir. 1960) is similarly not on point. In that case the trial court granted defendant's motion for judgment n. o. v. after a trial and jury verdict. The Court of Appeals, considering the merits of the case, reversed and remanded with directions to enter judgment pursuant to the reinstated jury verdict.

Our case falls within the class of cases described in 7 Moore's Federal Practice (1972 ed.), 60.30 [2], at page 424:

> And first, we shall consider the case where the appeal is dismissed, without a decision on the issues. * * * Since there is no problem of deviating from the appellate court's mandate and since the appeal no longer pends, the district court has the power to entertain a timely motion for relief under 60(b).

■ Appellant's second contention that the District Court did not have the power to alter or deviate from this court's prior mandate of dismissal of the appeal when permission to proceed was not obtained from this court, is equally without merit. To repeat the language in *Thornton, supra,* 109 F.2d at 320:

> * * * A mandate is completely controlling as to all matters within its compass, but on remand the trial court *is free to pass upon* any issue which was not expressly or impliedly disposed of on appeal. (Footnote omitted). [Emphasis added].

Further elaboration is provided in 7 Moore's Federal Practice (1972 ed.), 60.-30 [2] at 425, 426:

> * * * The authorities seem uniform that a mandate from a reviewing court is controlling as to all matters within the compass of such mandate and as to such matters the district court, after remand, can take no further action. At times a motion for relief will not raise matters that are within the compass of the mandate, and in that event the district court clearly has the power to proceed with the 60(b) motion without leave of the appellate court.

We additionally find no fault in the procedure whereby plaintiff sought to vacate dismissal of her complaint. *See* Stebbins v. State Farm Mutual Automobile Insurance Co., 134 U.S.App.D.C. 193, 413 F.2d 1100 (1969), cert. denied, 396 U.S. 895, 90 S.Ct. 194, 24 L.Ed.2d 173 (1969). *See also* Mooney v. Central Motor Lines, 222 F.2d 569 (6th Cir. 1955); Hubbard v. Baltimore & Ohio R. R. Co., 249 F.2d 885 (6th Cir. 1957).

■ Last, appellant argues that the District Court erred in holding that its order of dismissal dated April 16, 1971, was void, vacating its prior order under Rule 60(b)(4), F.R.C.P. We agree with appellant that a District Court has power to dismiss a plaintiff's suit for repeated failure to comply with court orders requiring discovery. This, however, does not settle the issue. Although it undisputedly had jurisdiction of person and subject matter, the District Court apparently considered its prior order of dismissal void because, under the circumstances of the case, the dismissal was tantamount to a denial of due process of law.[2]

2. In its order vacating the prior order of dismissal, the District Court concluded: "(1) that Gloria M. Lohman at the time of her husband's death acquired a vested interest in the $100,000 then due under said policy and a right upon proof of accidental death to the prescribed double indemnity; (2) that the insurance com-

pany's deposit in registry of said $100,000 and accrued interest operated as an admission of liability in accordance with the terms of its insurance contract, with liability for double indemnity included should the proof be sufficient to show death to have been caused by accident; (3) that the order of April 16, 1971,

It is not our task in this case to consider anew whether or not the former order of dismissal was tantamount to a violation of due process but rather to ascertain whether or not the District Court abused its discretion in judging its former order void. The District Court clearly had power to grant relief under Rule 60(b). The grant of relief involved an appraisal of the facts. Such an appraisal and grant of relief are largely within the discretion of the trial court. *See* Assman v. Fleming, 159 F.2d 332 (8th Cir. 1947); Conerly v. Flower, 410 F.2d 941 (8th Cir. 1969). There has been no clear showing of abuse of discretion. Farmers Co-op. Elevator Ass'n Non-Stock v. Strand, 382 F.2d 224 (8th Cir. 1967), cert. denied, 389 U.S. 1014, 88 S.Ct. 589, 19 L.Ed.2d 659 (1967). We therefore have no reason to find the District Court in error in vacating its former order of dismissal of the complaint.

Accordingly, we conclude that the District Court's order of October 15, 1971, vacating and setting aside the former order of dismissal of plaintiff's complaint, was a valid and proper exercise of the trial court's jurisdiction and authority.

At the trial, the basic issue of fact was whether Lohman's death was accidental.[3] Defendant never expressly interposed suicide as an affirmative defense to its liability for double indemnity under the policy, but defended on the theory that plaintiff could not carry the burden of proving that Lohman's death was accidental under the terms of the policy.

There was an extensive trial and many conflicts between the testimony of

many witnesses as to the life and death of William D. Lohman. Most of these conflicts were obviously determined in favor of plaintiff-appellee by the jury in finding that his death was accidental. In our discussion of the other issues presented, we will deal with the facts in more detail, but in essence, they are as follows: William D. Lohman died on July 10, 1967, and it is stipulated that he died of a gunshot wound, that there were no eye witnesses to his death, and that the insurance policy which is the subject of this suit was in effect on the date of death, with premiums paid up to that time. He had been a rancher all his life. He was in good health. He was happily married and had two children, both of whom had finished high school and were working. His living habits were simple and inexpensive, and he did not gamble. He was engaged in extensive ranching operations, and owned thousands of acres in North Dakota and Canada in a partnership called the L & O Cattle Company. In July 1967 Lohman and his partner became heavily indebted to the Cedar Vale National Bank of Kansas for large amounts of money obtained through notes, some of which bore false or bogus signatures. During the week before his death, he was trying unsuccessfully to borrow over half a million dollars to repay partnership indebtedness, and mentioned going to jail or being indicted in this connection. At the time of Lohman's death his estate was insolvent. There was some testimony that he appeared depressed that week, but most of the witnesses testified that there was no change in his attitude or disposition, and that he was making extensive plans

insofar as it appears to have affected those insurance rights and interests of the beneficiary, was void, Rule 60(b)(4), Fed.R.Civ.P., that the reservations therein contained explicit or necessarily implied, continued the right of Gloria M. Lohman to defend against the cross claimants and additional defendants, thereby actually in that part of the case and in any other aspects involving the merits preserving her status as the plaintiff and

(4) that the movant under her motion is entitled to the relief she seeks."

3. General American paid the sum of $100,000.00 on the ordinary life portion of its policy and the amount in dispute was whether an additional $100,000.00 was due. That amount was due only if the death of William Lohman was accidental within the terms of the policy.

for the future up to the time of his death.

On July 10th, after returning from a business trip to Montana, the Lohman couple drove to the home of their ranch's caretaker to get a pickup truck. William Lohman took the truck and a Winchester 308 rifle. He said that he intended to look at some livestock, and maybe shoot an antelope, and then meet his wife in a couple of hours in nearby Mobridge, South Dakota. The truck was found the next morning on a hill overlooking a watercourse on the ranch where antelope were sometimes found. The door of the truck was open on the driver's side, and the motor running. The body of William D. Lohman was lying on the ground a few feet from the open door with the gun nearby with one shell discharged and another in the clip. The gunshot wound was in the middle of the forehead, with the path of the bullet going directly into and through the middle of Lohman's cranium.

Appellant submits that the evidence was not sufficient to go to the jury on the issue of the cause of Lohman's death; that plaintiff-appellee's case is inconsistent with any plausible or reasonable theory of accident whatsoever; that a verdict of accidental death could only be based upon speculation and conjectures; and that the trial court erred in failing to direct a verdict and the jury's verdict cannot be sustained on appeal.

Two highly qualified and experienced experts, Dr. Wecht and Mr. McDonnell, testified that there was nothing about the fatal wound to indicate that it was a contact wound, indicating suicide. These two witnesses and others testified that the weapon could have been discharged while Lohman was slipping, falling or stumbling on a smooth moss-covered rock directly below the open door where he could have stepped in leaving the truck, or while he was pulling the rifle from the truck to shoot an antelope. From these conclusions and their consideration of all the other relevant facts, both of these expert witnesses expressed the opinion that death by accident was more likely than death by suicide. There was considerable opposing expert testimony that this was a contact wound and self-inflicted, but the weight of this testimony was for the jury to determine. The jury obviously accepted the testimony of plaintiff's witnesses as showing a reasonable theory, consistent with the facts, that Lohman's death occurred by accident. The trial court was not in error in failing to direct a verdict for defendant-appellant since there was sufficient evidence to go to the jury, and the evidence was sufficient to sustain the jury's verdict that Lohman's death was accidental.

■ Plaintiff was not required to prove the exact causation of the accident, but only that the death was caused by "external, violent and accidental means" as required for double indemnity by the insurance policy. Svenson v. Mutual Life Insurance Co. of New York, 87 F.2d 441 (8th Cir. 1937).

■ In instruction (16), the court charged the jury to find for plaintiff "if under this record you find William D. Lohman's death to have been caused by an accident, and otherwise for defendant insurance company if you find his death not to have been caused by accident, or under this record, a suicide." Defendant excepted to instruction (16) and requested that the court amplify and correct its instruction in accordance with the leading South Dakota case of Headlee v. New York Life Insurance Co., 69 S.D. 499, 12 N.W.2d 313 (1943). Specifically, defendant requested that the court add to the above quoted instruction these words: "bearing in mind that if the evidence leaves their minds in such doubt that they are unable to decide the point, the verdict should be against the party upon whom persuasion rests."

There is a clear distinction between the jury instructions held to be erroneous in *Headlee, supra,* and the instruc-

tion given in the present case. In *Headlee*, the South Dakota Supreme Court stated, at 315:

> The trial court instructed the jury, first that the burden of proof was upon the plaintiff to prove that Robert's death resulted solely from accidental means, and second, *that the burden of proof was upon the defendant to prove that the death was by self-destruction*. We believe this second part of the instruction was error occasioned by a failure to distinguish this action, which is based upon the double indemnity clause of the life insurance policy, from the action in which the insurer in a life policy raises the defense of self-destruction to the regular life indemnity. [Emphasis supplied].

In the court's instruction (16) excepted to in the present case, the trial court was not discussing burden of proof, and nowhere did it say the "burden of proof was upon the defendant to prove that the death was by self-destruction," as in *Headlee, supra*. On the contrary, the trial court did give the proper instructions that the burden of proof was upon plaintiff to prove that the death was accidental. Although defendant in theory did not expressly plead suicide as a defense, it clearly raised the issue of suicide by the presentation of its evidence and cross-examination throughout the trial. If the jury had found the evidence equally balanced between accidental death and suicide, it would have been governed by the court's repeated instruction that "the burden is on Gloria (plaintiff) by a preponderance of the evidence, to show the death to have been caused by accident."

Defendant cites New York Life Insurance Co. v. Anderson, 66 F.2d 705 (8th Cir. 1933) where an instruction that the jury should find for plaintiff if the evidence is equally balanced was specifically disapproved. No such instruction was given here.

The court very properly ruled that adding the requested language to the instructions would be "too much detail and give too much emphasis on the point. And it's actually within the court's instruction relating to burden of proof and, for that reason, is overruled."

██ Appellant asserts that the District Court erred in overruling its Motion for a Mistrial. The motion was based upon the supposed cumulative effect (a) of testimony given by plaintiff which appellant claims was hearsay and prejudicial, and (b) of certain statements by counsel for the FDIC before the jury. To dispose of this claimed error, it is useful at this point to explain more fully the FDIC's interest in this suit.

Before the instant suit was started, the FDIC had filed a creditor's claim against the estate of William Lohman for $1,460,538.66. The claim in part arose out of a "Guarantee Agreement," signed by Lohman to repay indebtedness due the Cedar Vale National Bank. The probate court issued an order on the claim allowing $580,954.61 with interest. The balance of the claim was left open by the probate court for further proof.

Defendant General American, by its crossbill for interpleader, first brought the FDIC into this action as additional defendants. Thereafter, the FDIC in its own right crossclaimed against General American Life Insurance Company both as to the monies paid into court and for the monies due by reason of the double indemnity provision of the policy, claiming that a large portion of the insurance premium paid on the General American policy had been paid out of funds wrongfully obtained by William Lohman from the Cedar Vale National Bank for which FDIC was thereafter acting as receiver. The FDIC also counterclaimed against plaintiff Gloria Lohman, asserting three counterclaims among which it alleged its claim filed against the estate of William D. Lohman in the total amount of $1,460,538.66 plus interest.

The matter of the "Guarantee Agreement" was first opened up in cross-examination of plaintiff by defendant General American's counsel as to the FDIC claim in the probate court and plaintiff's contesting the claim. On redirect exam-

ination the court allowed Gloria Lohman to testify, over defendant's hearsay objection, about her husband's understanding that the "Guarantee Agreement" was not binding upon him if the bank closed.

Counsel for FDIC then cross-examined plaintiff on the same subject matter. No objections were raised by General American at the time of this complained of testimony, and no motion was made for a mistrial until later, after the FDIC had withdrawn part of its claim against the estate. Appellant claims that Gloria Lohman knew nothing about the agreement until after Mr. Lohman's death and never talked with him about it.

Evidence as to whether the Guarantee Agreement signed by Lohman and his partner was to become ineffective if the bank closed, was given not only by plaintiff's testimony, but by two other witnesses present when the guaranty was given. They also testified that they understood at the time this transaction was made that the guaranty was to be ineffective as to Lohman if the bank closed, and it did close shortly thereafter. Plaintiff's testimony as to her husband's knowledge of the agreement was therefore only cumulative and not prejudicial.

Defendant General American asserts further prejudice by the fact that after plaintiff's testimony, counsel for FDIC stated to the jury that "by reason of our investigations" he was authorized to withdraw the contingent claim in the sum of the balance due by virtue of the Guarantee Agreement in the probate court. This statement, defendant claims, "was deliberately designed to show Lohman's innocence and thus, lack of motive for suicide. It introduced a collateral matter which had no proper place in the case." If it was a collateral matter, General American first brought it into the case by its own cross-examination of plaintiff in its obvious effort to prove that Lohman's financial troubles contributed to his alleged suicide.

It was only after General American had been permitted to go into the FDIC's claims and amounts thereof, including the amounts of unallowed and unproven claims filed in the probate court, that counsel for FDIC stated for the record that its contingent or unallowed claims against the estate would be dismissed. The FDIC, having asserted the claim in one of its counterclaims against plaintiff Mrs. Lohman, could most certainly withdraw and dismiss it.

After FDIC announced to the jury that the contingent claim would be dismissed and the dismissal filed with the probate court in Walworth County, it was made perfectly clear that the allowed portion of the claim in the neighborhood of $580,000.00 plus interest was left against the estate and the trial court thereafter instructed the jury to "disregard completely the comments made by counsel for the FDIC as to the contingent claim having been withdrawn." The trial court further commented to the jury that, "Those are matters which are for the court to decide later and have no particular bearing, I don't think, on either aspect of the case of either accidental death or the defense. I think I will leave it that way and I think that will correct any possibility of misunderstanding on the part of the jury." These instructions and comments to the jury certainly corrected any possible error claimed by appellant.

In Chicago & N. W. Ry. Co., v. Kelly, 74 F.2d 31 (8th Cir. 1934) plaintiff there was suing for personal injuries. He testified and his counsel alluded to his family responsibilities. Numerous objections were sustained to this testimony, and numerous exceptions noted to those allusions and arguments by counsel for plaintiff. Although this court reversed the trial court's judgment for plaintiff because of these repeated and deliberate acts of misconduct by plaintiff's counsel, it said at 35:

> The court made no mention of the subject-matter of these objections in the charge to the jury.

The admission of testimony showing family responsibilities usually has been held error. (Citations omitted). *Whether the admission of such testimony is reversible error largely depends on whether it has created passion and prejudice in the minds of the jury.* Courts should exercise great caution in setting aside judgments because of inadvertent remarks made by litigants or counsel during a hotly contested trial, even though improper, unless it clearly appears that they aroused the sympathy or prejudice of the jury and influenced the verdict. [Emphasis supplied].

Even if we were to accept General American's contention that the testimony of Gloria Lohman and the statements by FDIC hereinabove discussed were inadmissible, it does not clearly appear "that they aroused the sympathy or prejudice of the jury and influenced the verdict," in the words of Chicago & N. W. Ry. Co., *supra.* This is even more evident in view of the court's comments and admonitions to the jury that these matters had no particular bearing on accidental death and "to disregard completely the comments by counsel for the FDIC as to the contingent claim having been withdrawn." The trial court was acting well within the limits of sound discretion in denying defendant General American's belated motions for mistrial.

▪ Defendant also moved the trial court to dismiss the FDIC or limit its participation in the trial after FDIC entered into a pre-trial, court-approved settlement agreement with plaintiff, the terms of which made it a co-plaintiff with Gloria Lohman. This motion was denied. Defendant asserts error.

Defendant's position is that FDIC had no independent claim against it after the settlement agreement; that its rights are the same as plaintiff Gloria Lohman's rights; and that the only question left was whether plaintiff was entitled to recover against General American. Appellant argues that to allow FDIC to remain a party gave plaintiff and FDIC the advantage of double cross-examination of all defense witnesses, since their interests were the same.

By its cross-bill for interpleader, by its cross-claim against defendant and in its counterclaims against plaintiff, FDIC consistently maintained its independent right to the life insurance proceeds against defendant. The cross-claim is based upon the undisputed fact that part of the funds used to pay the premium for General American's policy of insurance on the life of the deceased, William D. Lohman, were misappropriated monies of the Cedar Vale National Bank, of which FDIC subsequently became receiver. A constructive trust in favor of FDIC resulted, which gave to FDIC as *cestui que trust* the option to enforce the trust against the proceeds of the policy or to claim an equitable lien upon them. The general rule is stated in Vorlander v. Keyes, 1 F.2d 67, 69 (8th Cir. 1924):

> * * * not only the property which the trustee acquires with the misappropriated funds, but all its fruits, in every form, its increase, its income, other property acquired by the trustee by the exchange or use of it in any way, *become, at the option of the cestui que trust, his property* * * *. [Emphasis supplied].

> See also 38 A.L.R. 930, 24 A.L.R.2d 672 and Bogert on Trusts, 2nd Ed., Section 925.

The rights of FDIC were not dependent or derivative on or from the rights of plaintiff. Defendant states that it can find no authority precisely in point, and concedes that "Rule 21 F.R.C.P." gives the trial court a broad discretion in the matter of dropping or adding parties. In denying defendant's motion to dismiss the FDIC or limit its participation, the trial court was clearly within the limits of its broad discretion.

Defendant also assigns as error the denial of its motion for a directed verdict as to FDIC for failure to prove any claim against General American. From our preceding analysis of the evidence and contentions by defendant, it is clear

that FDIC sustained its own burden of proof, and we need not repeat our conclusions in this regard. The trial court did not err in denying defendant's motion for a directed verdict as to FDIC.

■ Finally, defendant argues that the cumulative effect of all of the foregoing errors alleged by it, and other errors of the trial court, was prejudicial to General American, under the principle that although individual errors may not establish prejudice, they may in combination equal substantial prejudice, impelling a reversal.

We have examined these other alleged errors, most of which involve narrow and isolated evidentiary rulings by the trial court, whose cumulative effect is claimed to be prejudicial to appellant. We find that these alleged errors, neither individually nor in tandem, resulted in such prejudice. Only one of these claimed errors merits discussion.

Defendant assigns as an instance of cumulative error the admission into evidence of a certified copy of a death certificate as to the death of William D. Lohman which asserts that the death was accidental. We agree that the opinion of accidental death should have been excised from the certificate prior to its admission into evidence, but under the facts and circumstances of this case, we think the admission did not constitute reversible error.

Rule 43(a), Federal Rules of Civil Procedure, provides that "[a]ll evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held. In any case, the statute or rule which favors the reception of the evidence governs and the evidence shall be presented according to the most convenient method prescribed in any of the statutes or rules to which reference is herein made."

Further, 28 U.S.C. § 1739, provides that: "All nonjudicial records of books kept in any public office of any State * * *, or copies thereof, shall be proved or admitted in any court or office in any other State * * * by the attestation of the custodian of such records or books, and the seal of his office annexed, if there be a seal, together with a certificate of a judge of a court of record of the county, parish, or district in which such office may be kept * * * that the said attestation is in due form and by the proper officers." Thus, a certified and authenticated copy of a death certificate (which is what was offered here), if admissible in the State of North Dakota, is admissible in Federal District Court in the State of South Dakota and entitled to full faith and credit just as if it were being admitted in the State of North Dakota.

North Dakota law provides:

Effect of certificate of proof of birth and of certified copy of birth or death certificate.—A registrar's certificate of the record of a birth and a certified copy of any birth or death certificate issued by the state registrar of vital statistics shall be prima facie evidence of the facts therein stated and shall be accepted as such proof in any court or before any commission, bureau, board, or agency in this state. 23–02–40 N.D.C.C.

The death certificate is also admissible in Federal court in South Dakota if it is admissible under the rules and statutes of the State of South Dakota. Rule 43(a), F.R.C.P.; 28 U.S.C. § 1739.

South Dakota has a statute very similar to North Dakota's 23–02–40, N.D.C. C. It is S.D.C. 27.0220, providing that a certified copy of a death certificate "* * * shall be prima facie evidence in all the courts of this state of the facts therein stated * * *."

This section has been construed in DeGooyer v. Harkness, 70 S.D. 26, 13 N.W.2d 815 (1944), holding that a certified copy of the death certificate is admissible. This case does, however, say

that an opposing party would be entitled to move that part of the certificate be excluded if necessary.

It bears repeating that " * * * the law is, generally speaking, in great confusion * * *," Marker v. Prudential Ins. Co. of America, 273 F.2d 258, 262 (5th Cir. 1959), upon the question of admissibility of a death certificate containing an opinion on the ultimate fact to be proved, namely, accident or suicide. We have not found any North Dakota case construing 23–02–40 N.D.C.C. with respect to the precise question here involved. The case of Brinkman v. Mutual of Omaha Ins. Co., 187 N.W.2d 657 (N.D.1971), does not assist us. In that case the court admitted under authority of 23–02–40 N.D.C.C. a death certificate containing a statement by the coroner, who was a physician, that the cause of death was "coronary thrombosis." This was a medical conclusion based upon observable medical facts quite unlike the bald assertion of accidental death contained in Lohman's death certificate.

Similarly, we have found no South Dakota cases construing S.D.C. 27.0220 as to the precise question before us.

We believe the more salutary rule, expressed by the majority of cases construing statutes such as 23–02–40 N.D.C.C., making the death certificate prima facie evidence, is that the certificate is only prima facie evidence of the facts stated in the certificate and not of any opinion. See 28 A.L.R.2d 352, 362–364; 21 A.L.R.3d 418, 449–456. See *also* Lockwood v. Travelers Ins. Co., 498 P.2d 947, 952 (Colo.1972) and cases cited therein.

The conclusion of the coroner that the death in this case was accidental is a mere opinion, the same as it would be if he had concluded the death were suicidal. Even more convincingly, we do not think that the imprimatur of "prima facie evidence" should be given to such an assertion of an essentially nonmedical opinion as to the ultimate fact and pivotal issue in this case.[4]

Although the coroner's opinion should have been excised from the death certificate prior to its admission into evidence, the admission of the certificate did not constitute reversible error given the facts and circumstances of this case. The assertion of opinion in the certificate was not affirmatively exploited by plaintiff throughout the trial, and its importance was in fact minimized. The *only* reference to the certificate in oral argument to the jury was by plaintiff's attorney who merely stated: "We have in evidence the death certificate for whatever its worth, it's not signed—it's not a doctor, it's a layman, he says it was accidental death due to getting in or out of a pickup." The effect of such a statement by plaintiff's counsel was to minimize the importance of the death certificate, at least as to the cause of death.

In short, plaintiff did not rely upon the conclusions in the certificate in her argument and only referred to it as being admissible for whatever weight the jury might want to give it. There was certainly other evidence both ways on the suicide issue, and the jury would be the trier of that ultimate fact. Defendant was not prejudiced to a reversible extent, although a close question is admittedly presented.

The judgment of the District Court is hereby affirmed.

---

4. The opinion expressed in the death certificate was that Lohman " * * * was coincidentally shot in the head getting in or out of the pickup" and " * * * that death was met by accident." Trial Transcript, p. 207.